STEVEN R. AND TERRI T. LOFTUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Loftus v. Commissioner
Docket No. 24801-89
United States Tax Court
T.C. Memo 1992-266; 1992 Tax Ct. Memo LEXIS 290; 63 T.C.M. (CCH) 2944; May 11, 1992, Filed *290 Decision will be entered for respondent. Douglas R. Thompson and Lisa G. Rowling, for petitioners. Carolyn Lee Harber, for respondent. HAMBLEN
HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined additions to tax under sections 6653(a)(1) and (2) and 6661 in the respective amounts of $ 2,075.60, 50 percent of the interest due on $ 41,512, and $ 10,378 related to petitioners' understatement of income tax for the taxable year 1983 in the amount of $ 41,512. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether a purported tax return of a third-party taxpayer should be admitted into evidence; (2) whether petitioners were negligent under section 6653(a) by understating their 1983 tax liability by $ 41,512; and (3) when her respondent abused her discretion in refusing to waive the addition to tax under section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, supplemental stipulation of facts, second supplemental *291 stipulation of facts, and exhibits are incorporated by this reference. Petitioners, husband and wife, resided in Atlanta, Georgia, at the time they filed their petition in this case. After filing for an automatic extension, petitioners timely filed their joint Federal income tax return for 1983. In February 1988, Mr. Loftus executed a Form 870, wherein he waived the restrictions on assessments and collection of deficiencies in income tax for the year 1983. In so doing, petitioners conceded that they understated their 1983 income tax liability by $ 41,512. They paid the delinquent amount prior to the trial of this case. The adjustments to income related to $ 74,080 of unreported income from Shawnee Enterprises Inc. (Shawnee), $ 22,169 of disallowed partnership losses, and $ 8,883 of disallowed itemized deductions. Subsequently, respondent determined the additions to tax at issue in this case. Respondent later declined petitioners' request to waive the additions to tax. Terri T. Loftus (Mrs. Loftus) graduated from high school in 1967. She then attended Western Illinois University but did not graduate. She has been a flight attendant with Delta Airlines for approximately 21 *292 years. Steven R. Loftus (Mr. Loftus) graduated from high school in 1969. After a brief period of employment at a plant nursery, he worked from 1970 through 1981 for Delta Airlines in the areas of customer service and ground operations. During 1981 Mr. Loftus was employed by Griffin Medical Service, Inc., as a commissioned salesperson. Since that time, Mr. Loftus has been a manufacturer's representative for the sale of prosthetic ocular devices, such as intraocular lenses, lens implants, and eye implants to physicians and hospitals located in North Carolina and South Carolina. Shawnee was incorporated by Mr. Loftus' father, Robert E. Loftus, during 1980. On April 1, 1982, Mr. Loftus acquired control of Shawnee from his father. Since his acquisition of control of Shawnee, Mr. Loftus has been president, director, sole shareholder, and an employee of Shawnee. Mr. Loftus used Shawnee to receive commission checks paid by companies for whom he sold ocular devises. Mr. Loftus considered himself and Shawnee to be one and the same. He authorized all of Shawnee's expenditures. Mrs. Loftus was the treasurer and an employee of Shawnee during 1983. However, Mrs. Loftus performed only *293 minor clerical duties, such as mailing, errands, and answering the telephone for Shawnee. Since 1983 Mr. Loftus has been a successful, competent businessman as demonstrated by the over $ 830,000 of total gross revenues generated by Shawnee from 1983 through 1985. Moreover, Mr. Loftus invested in numerous financial ventures. He was a limited partner in two limited partnerships and a general partner in another partnership. Mr. Loftus hired Secretarial Group, Inc. (Secretarial Group), to perform secretarial and bookkeeping services and balance checking accounts for Shawnee. Secretarial Group balanced Shawnee's checking accounts, prepared and maintained monthly journals, general ledgers, adjusting trial balances, a suspense and commission analysis, adjusting journal entries, at least one employment tax return, and some expense reports for Mr. Loftus. Secretarial Group prepared all reports based upon the descriptions provided by Mr. Loftus on Shawnee checks, check stubs, cash tickets, gasoline and meal receipts, and credit card receipts. Mr. Loftus generally classified payments made from Shawnee's checking account by making entries on the checks and check stubs. However, he did *294 not always indicate whether the expenditure was a business or a personal expense. Mr. Loftus did not provide Secretarial Group with gas credit card statements, nor did he inform Secretarial Group that Mrs. Loftus signed on Shawnee credit card accounts. Mr. Loftus did not maintain a log of his personal and business mileage, but with the assistance of Secretarial Group maintained weekly travel expense reports. If Secretarial Group was unable to determine whether an item was personal or business from the information which Mr. Loftus provided, it would enter the expenses in journal and ledger accounts entitled "suspense" or "miscellaneous" to be resolved later by Mr. Loftus or Shawnee's return preparer. Mr. Loftus did not advise Secretarial Group of his personal withdrawals of funds from Shawnee accounts, nor did he request that Secretarial Group adjust entries in the company's books for payments of petitioners' personal expenses and investments. Moreover, he did not review the records prepared by Secretarial Group. Consequently, the journals and ledgers prepared by Secretarial Group did not properly separate personal and corporate use of Shawnee's funds and disguised Shawnee's *295 payment of a substantial amount of petitioners' personal expenses. Mr. Loftus took for granted that Secretarial Group and his return preparer would decipher the personal expenses from the information which he provided to them. Petitioners retained Universal Accounting Services, Inc. (Universal), to prepare their personal income tax returns as well as the corporate tax returns for Shawnee for the taxable years 1983 through 1985. Mr. Loftus first met with Comer B. Thompson (Mr. Thompson), president and treasurer of Universal, concerning preparation of the income tax returns in September of 1982. Mr. Thompson prepared petitioners' personal tax return as well as Shawnee's corporate return for 1983. Although Mr. Thompson represented himself as a bookkeeper and return preparer, petitioners postulated that he was a tax expert and a certified public accountant based on such things as the presence of tax law books in Mr. Thompson's office, Mr. Thompson's comments that he was going to attend certain tax seminars, and the name of the company, Universal Accounting. Mr. Thompson earned a degree from Auburn University in accounting and management. Mr. Thompson was aware that petitioners relied *296 upon him to be their "professional tax man". Since 1963 Universal provided bookkeeping services and prepared income, employment, and unemployment tax returns for individuals and small corporations. Mr. Loftus did not employ Universal to audit petitioners' or Shawnee's books or to prepare employment or unemployment tax returns for Shawnee. It was Mr. Loftus' impression that Mr. Thompson was obligated to go through the books and formulate a return for Shawnee. However, this impression was misplaced and was beyond the scope of Universal's engagement with petitioners. Universal was not involved in establishing the books and records of Shawnee, nor did it compile any ledgers or journals for Shawnee during any relevant time. During 1983 Shawnee was the only client which Universal prepared income tax returns for which it did not also prepare and maintain books. Universal did not perform audits of any of its other clients during the relevant time. To prepare returns for Shawnee, Mr. Loftus, personally or through Secretarial Group, provided Universal with monthly journals, ledgers, adjusting journal entries, trial balances, commission analysis, and other information specifically requested *297 by Universal. Mr. Loftus never instructed Mr. Thompson as to whether amounts were personal or business expenses. When Universal did not understand an item set forth in the records prepared by Secretarial Group, Universal contacted Mr. Loftus and discussed the item. Petitioners provided Universal with yearend interest summaries from credit cards and the checking account register for Shawnee. Mr. Thompson never saw Mr. Loftus' expense reports until the Internal Revenue Service audit in this case was commenced. If Mr. Thompson needed more specific information, he would have to specifically request that information, such as monthly bills or bank statements. Mr. Loftus never refused to provide the additional information when requested. Mr. Thompson generally respected Mr. Loftus' explanation of items set forth in Shawnee's books. He did not question the journal entries because he believed that Secretarial Group provided competent bookkeeping services. If Mr. Thompson could not obtain satisfactory information regarding an item in the suspense or miscellaneous accounts, he included such item in petitioners' 1983 income. As part of preparing petitioners' returns, Mr. Thompson also *298 made adjusting journal entries for Shawnee at yearend. In addition to information related to Shawnee, petitioners provided Mr. Thompson with Mrs. Loftus' Forms W-2, interest statements issued in petitioners' names, Schedules K-1 related to numerous partnerships, a check register relating to petitioners' personal checking account, and information related to petitioners' personal affairs as specifically requested by Universal. Because Universal had difficulty in obtaining the information from Mr. Loftus which was necessary to file income tax returns for Shawnee before March 15, 1984, and petitioners before April 15, 1984, Universal filed for extensions of time to file Shawnee's and petitioners' returns for 1983 until September 15, 1984, and August 15, 1984, respectively. Mr. Loftus did not advise Universal of payments of personal expenses and investments other than to reply to direct inquiries from Mr. Thompson concerning the payments reflected in the suspense, miscellaneous, or commission accounts of Shawnee. Instead petitioners relied on Universal and Mr. Thompson to classify expenses as personal or business based on the information which they provided. The majority of items *299 which were not correctly included on petitioners' individual return were personal expenses of petitioners which were paid for by Shawnee. These items were mischaracterized as corporate rather than personal expenses. Petitioners used funds from Shawnee's checking and brokerage accounts to pay for personal expenses and investments, such as expenses for swimming pool care, pest control, and landscape services at petitioners' residence; deposits related to petitioners' individual retirement accounts; jewelry; meals; travel; health club memberships; clothing; petitioners' personal charges on credit cards; home telephone service; income tax liabilities; a time-share interest in a condominium located at Sugar Mountain, North Carolina; a condominium located at Vail, Colorado; petitioners' interest in Columbian oil and gas drilling program, G.K.B. properties, and Danville Realty Investors, Ltd.; funds invested in TWM, Inc.; and personally owned rental property. Additionally, petitioners used Shawnee funds to purchase automobiles. The promissory notes and interest statements related to the automobile loans were issued in petitioners' names, and the interest expenses were claimed on their *300 personal income tax returns for the year at issue. Shawnee improperly deducted many of the above personal expenditures on its 1983 return. While preparing the income tax returns for petitioners and Shawnee, the interactions between Mr. Loftus and Mr. Thompson were limited. Because Mr. Loftus traveled during the business week, there was often a delay in getting requested information from Mr. Loftus. During the preparation of petitioners' and Shawnee's returns, Mr. Thompson cautioned Mr. Loftus about claiming depreciation and expenses related to three automobiles on Shawnee's return. Mr. Loftus insisted that Shawnee deduct all expenses related to the automobiles. During 1982 Mr. Loftus received a salary of $ 14,000 and sales commissions totaling $ 47,631 from Shawnee. Mr. Thompson advised Mr. Loftus about Shawnee's withholding and employment tax obligations, but Mr. Loftus disregarded the advice. Mr. Loftus determined that after 1982 Shawnee would compensate him as a commissioned salesman and not as an employee. The 1983 corporate return of Shawnee and petitioners' individual return inconsistently reported the income designated as compensation which Mr. Loftus received from *301 Shawnee. Petitioners' individual return reported the income on the Schedule C as commission income, while the corporate return treated the amount as compensation to officers. Mr. Thompson explained that, in his opinion, the amount could not be classified as salary on Shawnee's return because there had been no withholding, that the distinction between salary and commission was merely a difference in terminology, and that provided that the amount was reported as income it was proper to report the amount in the manner which he chose. Based upon the information provided by Secretarial Group and Mr. Loftus, petitioners expected Universal to ferret out personal use of Shawnee's funds and other assets and determine the proper tax treatment of items of income and expenses. Mr. Loftus understood the distinction between personal expenses and corporate expenditures. Petitioners did not intentionally conceal any information from Mr. Thompson, but portions of the materials which they provided to Mr. Thompson were incomplete. At trial petitioners expressed confidence in Mr. Thompson's ability to prepare their tax returns and related that they depended on him to prepare accurate returns. *302 But, there is no indication that they communicated this to Mr. Thompson. Petitioners determined that it was not necessary to review either the 1983 corporate return for Shawnee or their 1983 personal income tax return to determine the accuracy of income, deductions, and losses prior to signing and filing the returns. Mr. Loftus admitted at trial that, had he reviewed the records which Secretarial Group prepared for Shawnee for 1983, he would have been able to determine the correct amounts of Shawnee's payments for petitioners' personal expenses and his income from Shawnee. Finally, during the pendency of this case, petitioners failed to provide portions of the documentation which respondent requested. Consequently, respondent moved for sanctions against petitioners. The Court granted respondent's motion and issued an order prohibiting petitioners' from producing records at trial relating to petitioners checking, savings, certificate of deposit, credit card, and individual retirement account maintained by petitioners or Shawnee. OPINION A. Admissibility of Evidence
Before addressing the negligence and substantial understatement issues, we first address the admissibility *303 of an incomplete, unsigned, telefaxed copy of a purported return of a third-party taxpayer. At trial, petitioners attempted to introduce as evidence the purported 1983 corporate tax return of Eye Technology, Inc. (ETI). During cross-examination of Mr. Thompson, petitioners' counsel attempted to introduce the evidence for purposes of rebutting Mr. Thompson's testimony concerning his return preparation practices. Respondent objected to the admission of the copy based on section 7216, the lack of proper foundation, authentication, and third-party taxpayer's consent. Moreover, respondent argued that petitioners failed to satisfy the requirements of rules 901, 1002, 1003, and 1004 of the Federal Rules of Evidence. Respondent conceded that section 6103 and the Freedom of Information Act, 5 U.S.C. sec. 552 (1988), do not prohibit the introduction of the document. Because the parties could not agree on the admissibility of the document at trial, the Court asked that both parties address this issue on brief. Mr. Thompson testified that he could not recall whether he prepared ETI's tax return for 1983. However, the document was not presented to Mr. Thompson to identify or authenticate. *304 Respondent contends that the return of ETI should not be considered as evidence because Mr. Thompson is a return preparer and as such is subject to the nondisclosure provisions of section 7216. Sec. 301.7216-1(b)(2), Proced. & Admin. Regs. Petitioners concede that Mr. Thompson is a return preparer, and is therefore, subject to the nondisclosure provisions of section 7216. Petitioners, however, contend that section 7216 does not prohibit the introduction of the return because Mr. Thompson was not asked to disclose any tax return information. According to petitioners, Mr. Thompson would only be asked to acknowledge that he did prepare the return and that it was prepared in a manner similar to those of petitioners' and Shawnee's returns. Petitioners assert that section 7216 does not prohibit the introduction of the evidence because they were the party who wished to disclose the contents of the return, not the return preparer. Rule 901 of the Federal Rules of Evidence requires that documents be authenticated or identified before they may be admitted into evidence. [1] Section 7216(a) prohibits the disclosure or use of tax return information by return preparers, unless one of the *305 exceptions provided for in section 7216(b) applies. [2] Tax return information includes "any information, including but not limited to a taxpayer's name, address, or identifying number". Sec. 301.7216-1(b)(3), Proced. & Admin. Regs. (Emphasis added.) Section 7216 prohibits such a disclosure, and violation of the section could result in a 1-year jail sentence and/or a $ 1,000 fine. *306 Although section 7216 does not define disclosure, section 6103(b)(8) which relates to the Government's ability to disclose tax return information broadly defines disclosure as "making known to any person in any manner whatever a return or return information." In this case, the act of authenticating the return would be tantamount to making a disclosure of tax return information. Authenticating the document causes the tax return to be known and identified. Although petitioners argue that they would be disclosing the information, not Mr. Thompson, petitioners acting in tandem with Mr. Thompson would in fact be introducing the tax return into the public record. If petitioners wished to introduce such evidence, they could have asked the president of the company to authenticate the document. Mr. Thompson testified that Mr. Turner, the president of ETI, was a close friend. It is inexplicable why Mr. Turner was not present to authenticate the document. Accordingly, in the absence of a Court order, section 7216 prohibits Mr. Thompson from authenticating the return of a third-party taxpayer without the third-party's consent. B. Negligence
Section 6653(a)(1) imposes an addition *307 to tax if any portion of an underpayment is due to negligence or disregard of the rules and regulations. Section 6653(a)(2) provides for an addition to tax in the amount of 50 percent of the interest on the portion of the underpayment attributable to negligence. Negligence for purposes of section 6653(a) is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue T.C. Memo. 1964-299. Respondent's determination that petitioners' underpayment was due to negligence is "presumptively correct and must stand unless the taxpayer can establish that he was not negligent." Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. Accordingly, petitioners have the burden of proving that respondent's determination is erroneous. Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); *308 Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioners have the burden of proving that they were not negligent in understating their tax liability. Respondent determined negligence additions against petitioners only, not their return preparer. The determination to impose return preparer liability is within the discretion of respondent. As such, we are limited to determining whether petitioners acted in a reasonably prudent manner in filing their return. Although we cannot ignore the return preparer's actions, petitioners must demonstrate that they acted reasonably, independent of the return preparer's conduct. Petitioners contend that they exercised the due care of a reasonable, prudent person in the preparation of their 1983 income tax return. In support of their contention they assert the following: (1) They provided their return preparer, Mr. Thompson, with all the information necessary to prepare their return accurately; (2) they relied exclusively upon Mr. Thompson for tax advice; (3) Mr. Thompson was responsible for the proper characterization of items on their individual income tax return and the 1983 Shawnee corporate return; (4) the majority *309 of the income omitted from their 1983 return was due to Mr. Thompson's mischaracterization of personal items as corporate expenses; and (5) they are unsophisticated in tax matters and would have been unable to discern an error in characterization. Respondent contends that the record does not support petitioners' assertions. To the contrary, respondent contends that petitioners failed to provide Mr. Thompson with all relevant information, that petitioners made numerous misrepresentations to Mr. Thompson, that petitioners disregarded Mr. Thompson's tax advice, and that they failed to review their tax return. We agree with respondent and find that the errors on petitioners' return were due to petitioners' failure to provide Mr. Thompson with all the necessary information, Mr. Loftus' failure to review the records prepared by Secretarial Group, and petitioners' failure to review their tax return. Generally, the duty of filing accurate returns cannot be avoided by placing the responsibility on a return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). However, in limited situations, a taxpayer may insulate himself from the negligence addition *310 to tax. To avoid liability a taxpayer must establish the following: (1) That he provided the return preparer with complete and accurate information from which the tax return could be properly prepared; (2) that an incorrect return was the result of the preparer's mistakes; and (3) that the taxpayer in good faith relied on the advice of a competent return preparer. Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Daughtery v. Commissioner, 78 T.C. 623, 641 (1982); Magill v. Commissioner, 70 T.C. 465, 479 (1978), affd. 651 F.2d 1233 (6th Cir. 1981); Pessin v. Commissioner, 59 T.C. 473 (1972). Finally, even if a taxpayer establishes the above requirements, he still has a duty at least to read and make a cursory review of the return and make sure that all income items are included. Metra Chem Corp. v. Commissioner, supra at 662; Magill v. Commissioner, supra at 479-480. [3]
*311 In evaluating the evidence in this case, we must keep in mind that the ultimate responsibility for a correct return lies with the taxpayer who must furnish the necessary information to the agent who prepares his return. Pessin v. Commissioner, supra at 489. Relying on dictum in United States v. Boyle, 469 U.S. 241, 251 (1985), petitioners contend that they should be excused from the negligence additions on the ground that they reasonably relied upon substantive tax advice provided by Mr. Thompson. In Boyle, the taxpayer, an executor of his mother's will, retained an attorney to handle the estate. Id. at 242. The taxpayer provided the attorney with all the necessary information, but the estate return was filed 3 months late apparently because of a clerical oversight in omitting the filing date from the attorney's calendar. Id. at 243. The Commissioner determined an addition to tax was due under section 6651(a)(1) for late filing. Id. The Supreme Court held that the failure to timely file was not excused by the taxpayer's reliance on an agent as such reliance was not reasonable cause *312 under section 6651. United States v. Boyle, supra at 252. The taxpayer, not his attorney, had the duty to comply with the statute. The Supreme Court distinguished Boyle from the situation in which a taxpayer relied on the erroneous advice of counsel concerning a question of law. Id. at 250. In this case however, petitioners did not establish that they relied on substantive tax advice provided by Mr. Thompson. Petitioners employed Mr. Thompson to prepare their tax returns from the information which their bookkeepers provided. The evidence reflects that Mr. Loftus did not seek tax advice and on at least one occasion declined to follow the advice which Mr. Thompson offered. The situations in which we have declined to uphold respondent's negligence determinations based on the reliance of a return preparer are far more limited than petitioners assert. "A close examination of these cases reveals that they raised questions as to the tax treatment of complex tax transactions". Metra Chem Corp. v. Commissioner, supra at 662; Jackson v. Commissioner, supra at 539; Pessin v. Commissioner, supra at 489. *313 Such is not the case here. Moreover, any complexity that arose out of this case was the doing of petitioners. Petitioners chose to commingle their personal and business expenditures and as such are responsible for insuring the correct allocation of income and expenses on their income tax returns. We do not believe that petitioners should be allowed to sidestep their duty of filing an accurate return by simply alleging that they supplied the correct information to their accountant and relied fully on him. First, petitioners did not review the returns prepared by Mr. Thompson. Petitioners failed to report $ 74,080 of taxable income, or approximately 35 percent of Mr. Loftus' taxable income from Shawnee during 1983. We believe that such a substantial underreporting of income would not have gone unnoticed if petitioners had made even a cursory review of their return. Mr. Loftus testified that if he had reviewed the records of Shawnee for 1983 he would have been able to determine that correct amount of Shawnee's payments of petitioners' personal expenses and his income from Shawnee. There is no reasonable justification for not doing so. It is not only unreasonable to fail to *314 check a return for accuracy prior to signing it, but in this case, where there was such a commingling of personal and business expenses, it is also irresponsible. A return preparer who does not even prepare the journals and ledgers cannot be held to such an onerous burden as deciphering the difference between personal and business expenses. Second, petitioners failed to establish that they supplied their accountant with complete and accurate data. The most significant example of their failure to disclose is Mr. Loftus' furnishing to their accountant corporate records that incorrectly reflected petitioners' personal expenditures and use of Shawnee's funds and assets as legitimate corporate expenses. Taxpayers who control the affairs of a corporation cannot establish that they provided correct information to their return preparer when they provide corporate records that incorrectly reflect that alleged business expenses did not benefit the individual. Magill v. Commissioner, 70 T.C. at 479. Third, as the sole shareholder, director, and president of Shawnee, Mr. Loftus controlled the financial affairs of Shawnee and commingled Shawnee's and petitioners' personal *315 affairs. Mr. Loftus used Shawnee's funds to pay substantial personal expenses and to purchase assets and make investments titled in petitioners' names. However, Mr. Loftus failed to disclose or concealed from Mr. Thompson the true extent of personal expenditures and investments made with Shawnee's funds by providing canceled checks, check stubs, and receipts that did not reflect the personal nature of the expenditures and investments. Finally, petitioners argue that they were unsophisticated in tax matters and that we should follow the holdings in Ware v. Commissioner, T.C. Memo. 1986-406, and Casa Loma, Inc. v. Commissioner, T.C. Memo. 1980-78. In Ware the taxpayer, who was unsophisticated in tax matters and relied exclusively on his accountant's tax counseling, turned over to his accountant all of his receipts and documents. To the contrary, in this case, Mr. Loftus turned over ledgers and journals and only provided his accountant with receipts and more specific documents when the accountant requested. Moreover, the record does not support that petitioners were unsophisticated in tax matters; for example, Mr. Loftus declined to follow *316 Mr. Thompson's tax advice on at least one occasion. In Casa Loma we held that the directors of the corporate taxpayer were unsophisticated in tax matters and made a good faith attempt to furnish their accountant with all the necessary information. Considering that petitioners commingled their personal and business expenses to such a large extent and that Mr. Loftus did not check the ledgers and journals which were sent to Mr. Thompson, it is impossible to find that petitioners made a good faith attempt to provide all relevant data. The unchecked ledgers and journals simply did not adequately disclose the extent to which petitioners used Shawnee's funds to pay for personal expenditures. Petitioners in this case "must stand ready to accept the ultimate blame." Pritchett v. Commissioner, 63 T.C. 149, 175 (1974). Accordingly, we hold that petitioners are liable for the additions to tax under section 6653(a) for negligence. C. Substantial Understatement
The final issue presented for our decision is whether respondent abused her discretion in refusing to waive the addition to tax under section 6661. Petitioners contend that they had reasonable cause *317 for the understatement on their 1983 return and acted in good faith based upon their reliance on Mr. Thompson. Consequently, they argue that respondent should have waived any addition to tax under section 6661. Section 6661(a) provides that, if there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Pallottini v. Commissioner, 90 T.C. 498 (1988). There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). Petitioners concede that they understated their income tax by $ 41,512 in 1983. The amount of understatement may be reduced by the portion of the understatement which the taxpayer shows is attributable to either of the following: (1) The tax treatment of any item for which there was substantial authority for its treatment on the return; and (2) the tax treatment of any item which is adequately disclosed on the return. Sec. 6661(b)(2)(B). In this case, there was no substantial *318 authority for the income omitted from or the deductions improperly claimed on petitioners' 1983 tax return, nor was there adequate disclosure as to the items. Section 6661(c) authorizes the Commissioner to waive any part of the addition to tax imposed under section 6661(a) upon a showing by the taxpayer of reasonable cause for the understatement and that the taxpayer acted in good faith. The most important factor in determining whether to grant a waiver is "the extent of the taxpayer's effort to assess the taxpayer's proper tax liability under the law." Sec. 1.6661-6(b), Income Tax Regs.; Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988). Reliance upon the advice of a professional will not constitute a showing of reasonable cause and good faith unless, under all the circumstances, such reliance was reasonable in light of the taxpayer's experience, knowledge, and education. See Metra Chem Corp. v. Commissioner, 88 T.C. 654 (1987); sec. 1.6661-6(b), Income Tax Regs.
The Commissioner's authority to grant a waiver is discretionary. Mailman v. Commissioner, supra at 1084. The appropriate standard of review for *319 the denial of a waiver is whether respondent abused her discretion; whether respondent exercised her discretion arbitrarily, capriciously, or without sound basis in fact. Id. at 1083-1084. Petitioners bear the burden of proving that respondent abused such discretion. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Mailman v. Commissioner, 91 T.C. at 1083-1084. Petitioners argue that based on the following respondent was arbitrary in not waiving the addition: (1) Petitioners were unsophisticated in tax law; (2) while Mr. Loftus is a successful businessman, he never directly dealt with the type of tax matters in issue; (3) the majority of items which caused the understatement resulted from a mischaracterization of items by Mr. Thompson; (4) even if petitioners had reviewed the tax returns prepared by Mr. Thompson, they were not sophisticated enough in tax matters to recognize the mischaracterizations; and (5) petitioners provided Mr. Thompson with all available information including additional matters requested by Mr. Thompson. The evidence establishes that petitioners made no good faith efforts to assess the extent *320 of their income tax liability for 1983 or the contents of their return. Petitioners admitted they did not review their return and Mr. Loftus did not review the bookkeeping information which he provided to the accountant to prepare the 1983 returns. Petitioners' failure to review their own return reflects that petitioners completely abdicated their duty to file a correct return by closing their eyes to facts that they could have discerned. The facts demonstrate that the understatement was not due to reasonable cause, that petitioners did not make a good faith effort to determine their correct tax liability, and that petitioners are not entitled to a waiver of the addition to tax under section 6661. Accordingly, we hold that respondent did not abuse her discretion in declining to waive the section 6661 addition to tax. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Fed. R. Evid. 901(a)↩ provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." 2. Sec. 7216 provides as follows: (a) GENERAL RULE. -- Any person who is engaged in the business of preparing, or providing services in connection with the preparation of, [income tax returns], * * * or any person who for compensation prepares any such return * * * for any other person, and who -- (1) discloses any information furnished to him for, or in connection with, the preparation of any such return, or (2) uses any such information for any purpose other than to prepare, or assist in preparing, any such return * * *, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $ 1,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution. (b) EXCEPTIONS. -- (1) DISCLOSURE. -- Subsection (a) shall not apply to a disclosure of information if such disclosure is made -- (A) pursuant to any other provision of this title, or (B) pursuant to an order of a court. (2) USE. -- Subsection (a) shall not apply to the use of information in the preparation of, or in connection with the preparation of, State and local tax returns and declarations of estimated tax of the person to whom the information relates. (3) REGULATIONS. -- Subsection (a) shall not apply to a disclosure or use of information which is permitted by regulations prescribed by the Secretary under this section.↩
3. The responsibility to review a return cannot be trivialized. In Morrow v. Commissioner, T.C. Memo. 1991-101↩, we held that supplying records to an accountant and relying on the accountant to prepare a return was not sufficient to relieve a taxpayer of the "ultimate responsibility for the correctness of their returns." Based on the taxpayers' failure to adequately review their returns, we sustained the Commissioner's negligence determination.