**Robert B. and Alma B. WEISS, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

No. 91–5117.

United States Court of Appeals, Eleventh Circuit.

March 19, 1992.

Sidney A. Soltz, Miami, Fla., for petitioners-appellants.

Gary R. Allen, Robert Baker, Charles E. Brookhart, Tax Div., Washington, D.C., for respondent-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and HILL, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Robert and Alma Weiss appeal the Tax Court's decision upholding the Internal Revenue Service's (IRS) Notice of Deficiency that sought income tax payments for 1979. We conclude that the Tax Court incorrectly determined that Weiss no longer remained liable for partnership liabilities. We REMAND this case to the Tax Court for further consideration consistent with this opinion.

Robert Weiss was, during 1979, a real estate developer and the sole shareholder and president of Personal Management Services, Inc. (Weiss/PMS), which was a motel operation and management business. Sometime in late 1977 or early 1978, Weiss became aware that the Hawaiian Village Motel (Motel) in Tampa was for sale. Weiss tried to establish a limited partnership to purchase the Motel but failed in his attempts. He was then introduced to David Hillman, a Washington accountant who invested in real estate through an acquisition and management firm called Southern Management Company. Following negotiations, Weiss and Hillman agreed to form a partnership in which Hillman would provide limited working capital and obtain financing to purchase the Motel and in which Weiss would manage the Motel.

Weiss and Hillman signed a letter of intent confirming their partnership in November 1978. In December Weiss, Hillman and two Hillman associates, Martin Thaler and Melvin Lenkin, formed a general partnership, the Hawaiian Village Partnership (Partnership), to purchase and operate the Motel. The partnership agreement stated that the profits and losses of the Partnership would be divided in the following manner: fifty percent allocated to Weiss and fifty percent allocated collectively to Hillman, Thaler and Lenkin (Hillman Group).

The Partnership then entered into an agreement with Weiss to manage the Motel through Weiss/PMS. This separate management agreement called for Weiss/PMS to receive five percent of the Motel's gross income, with a monthly draw of $10,000 to be applied against the five percent fee. The management agreement could be terminated at the option of the Partnership if the Motel failed to show an annual net cash flow of at least $250,000.

On Weiss' partnership share, the partnership agreement stated that Weiss would forfeit his partnership interest if Weiss failed to advance capital to the Partnership if requested to do so or if the management agreement between the Partnership and Weiss/PMS was terminated.

Immediately before forming the Partnership in December 1978, the Hillman Group arranged to borrow $1,000,000 from Union First National Bank of Washington (Union First). The loan was jointly and severally guaranteed by Hillman, Thaler and Lenkin. In February 1979 the Partnership renewed the loan, at which time Union First successfully requested to have Flagship Bank of Tampa (Flagship) participate in $300,000 of the $1,000,000 loan. To participate, Flagship required Weiss personally to guarantee Flagship's $300,000 participation.

By late-summer 1979 the day-to-day operations of the Motel were in disarray under Weiss' management. At Weiss' request, Hillman hired two accounting firms to determine the extent of the financial difficulties. One firm determined that an immediate infusion of $300,000 was necessary to bring accounts current, while the other firm determined that a $450,000 infusion was necessary to cover the deficit between current liabilities and current assets.

Based on these independent studies and on his own review of the Motel's financial affairs, Hillman acted. On October 4, 1979, Hillman, on behalf of the Partnership, terminated the management agreement with Weiss/PMS. On October 5, he made a capital call to the partners, requesting $400,000 in capital to boost the Motel's finances. Weiss' fifty percent share of this capital infusion would have been $200,000.

The Hillman Group satisfied their portion of the capital call by establishing a $200,000 line of credit with Flagship. Weiss, though, failed to remit his portion of the capital call. As a result, Hillman notified Weiss on November 19 that Weiss' partnership interest had been acquired on November 15 pursuant to the partnership agreement that allowed the Partnership to acquire the interests of a partner who failed to satisfy a capital call within thirty days.

Despite the termination of the Partnership, Weiss' tax return for 1979 took partnership tax credit and loss deductions. Upon later review of Weiss' return, the IRS issued a Notice of Deficiency, stating that, because Weiss' partnership interest was terminated and because he was re-

lieved of partnership liabilities before November 15, 1979, the IRS disallowed the following tax deductions: Weiss' tax loss for partnership taxes accruing after November 15; Weiss' use of the investment tax credit; Mrs. Weiss' business expenses; and various charges and expenses. The IRS also claimed that, because Weiss was relieved of partnership liability, Weiss realized a short-term capital gain on his share of the partnership liabilities for which he was no longer responsible.

After receiving the IRS Notice of Deficiency, Weiss filed a petition in the Tax Court for a redetermination of the deficiency. The Tax Court sustained the deficiency, and this appeal followed.

## DISCUSSION

Weiss appeals two Tax Court conclusions that determined the outcome of his case: first, that Weiss' partnership interest was terminated on or before November 15, 1979; and second, that Weiss was relieved of partnership liability on or before November 15, 1979. Because we readily conclude from the facts that the Tax Court correctly determined, for tax purposes, Weiss' partnership interest was terminated in November 1979, we address only whether Weiss was also relieved of partnership liability at that time.

When reviewing Tax Court decisions, "the Tax Court's finding of facts are subject to the 'clearly erroneous' standard of review.... However, whether [a taxpayer] received ... income is an ultimate fact and as such is to be treated as a legal rather than a factual determination, and is subject to 'normal appellate review.'" *Stovall v. Commissioner*, 762 F.2d 891, 894 (11th Cir.1985). We conclude that Weiss was not relieved of partnership liability in 1979 and, therefore, that the Tax Court erred in determining Weiss' taxable gain in 1979.

Weiss' $300,000 personal guarantee on Flagship's participation in the loan to the Partnership disposes of the issue before us.[1] Weiss could only have realized a taxable gain if he was relieved of partnership liability. *See* 26 U.S.C. § 752(b). After reviewing the record, we have found nothing to indicate that, between November 15, 1979 and December 31, 1979, Weiss was relieved of his personal guarantee on Flagship's $300,000 participation in the partnership loan.

■ In concluding that Weiss continued to be liable on his guarantee of the Flagship's participation loan, we reject the Tax Court's interpretation of Florida partnership law. The Tax Court relied on two Florida statutes to decide that Weiss had been relieved of partnership liability. The Tax Court looked first at Fla.Stat. § 620.76(6), which states:

When a partner is expelled and the remaining partners continue the business, either alone or with others without liquidation of the partnership affairs, creditors of the dissolved partnership are also creditors of the person or partnership continuing the business.

While this statute protects partnership creditors, it does not divest them of their legal right to go after an ex-partner to whom they extended credit or an ex-partner who personally guaranteed a loan to the partnership. In fact, another Florida statute—which is part of the second section the Tax Court relied on—expressly states that "[t]he dissolution of the partnership of itself does not discharge the existing liability of any partner." Fla.Stat. § 620.735(1).

■ The Tax Court, though, overlooked section 620.735(1) and went straight to Fla.Stat. § 620.735(2):

A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partner con-

---

1. Although the Tax Court's memorandum decision fails to mention this specific liability, the record indicates that the Tax Court judge was fully aware of the personal guarantee. In fact, at the Tax Court hearing the judge stated that, "I think the question is whether Flagship thinks [Weiss] was on the hook for $300,000 and I would be very surprised if they would come in here and say that he was not on the hook for $300,000." R.1 at 189–90. We agree.

tinuing the business. The agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business.

No express or inferred agreement existed here. There was no express agreement between Weiss and the Hillman Group partners relieving Weiss of liability; Flagship did not expressly release Weiss from his personal guarantee; and nothing in the course of dealings between the Hillman Group and Flagship permits the inference that Flagship released Weiss from his personal guarantee.

Because the Tax Court did not indicate what course of dealings showed that Weiss was relieved of liability, we suppose that Flagship's extension of a $200,000 line of credit to the Hillman Group somehow influenced the Tax Court. But this credit extension is in no way inconsistent with the fact that Flagship still considered Weiss personally liable on his guarantee of the loan participation. Without a clear inconsistency between the written guarantee and later conduct by Flagship, we see no reason to infer that Weiss had been discharged from his obligation pursuant to the guarantee. For example, we *might* decide that Weiss was relieved from liability by the course of dealings if, without expressly releasing Weiss, Flagship had substituted a new written guarantee from the Hillman Group or one of its members after Weiss' partnership interest was terminated. Or, for another example, we *might* also have decided that Weiss was released if, in the course of dealings, Flagship had been forced to recover on their loan participation and sought recovery only from the Hillman Group and not from Weiss. But here nothing in the record shows that Flagship had released Weiss from his personal guarantee.

The Tax Court also erred in focusing on whether Weiss ultimately was held accountable for partnership liabilities. The issue does not turn on ultimate accountability; instead, the question is whether, in the forty-six days between November 15 and December 31, Weiss remained liable for partnership liabilities. We conclude that he remained liable: first, for the reasons stated above in the discussion of Florida partnership statutes, Weiss remained liable for partnership debt despite the dissolution of the partnership, *see* Fla.Stat. § 620.-735(1); and second, the personal guarantee to Flagship evidenced ongoing liability.

In concluding that Weiss remained liable for partnership liabilities, we are persuaded in part by Weiss' reliance on *Barker v. Commissioner*, T.C.Memo. 1983–643, 1983 WL 14625, 47 T.C.M. (CCH) 131, T.C.M. (P–H) 83,643. We are especially influenced by the Tax Court's recognition in *Barker* that "it is well established that in determining the year in which income should be reported consideration cannot be given to what may or may not happen in a subsequent year." 1983 WL 14625, at *12 (citations omitted). Whether Weiss was ever held accountable for partnership liability does not change the fact that he remained liable for partnership liabilities in 1979. The Tax Court, therefore, erred in holding that Weiss was relieved of partnership liability. We vacate the Tax Court's judgment and remand this case to the Tax Court to determine the consequences of this opinion.

VACATED and REMANDED.