RICHARD D. AND MARSHA L. MOORE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moore v. Commissioner
Docket No. 21529-92
United States Tax Court
T.C. Memo 1994-446; 1994 Tax Ct. Memo LEXIS 451; 68 T.C.M. (CCH) 660; September 6, 1994, Filed *451 Decision will be entered under Rule 155. For petitioners: J. Clayton Berger. For respondent: Marikay Lee-Martinez. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income tax: Additions to Tax Year
Deficiency
Sec. 6653(a)(1)
Sec. 6662(a)
1987
$ 139,965
---
--
1988
7,636
$ 382
--
1989
24,305
--
$ 1,065
After concessions by the parties, the sole remaining issue concerns the characterization of income resulting from the transfer of Richard Moore's partnership interest in Richards Development Partners Three (RDP-3), an Arizona general partnership, to one of the other RDP-3 partners. Specifically, we must decide whether the transfer of Mr. Moore's partnership interest in RDP-3 in exchange for cash, a note, and the assumption of Mr. Moore's obligations on RDP-3's debt by the purchaser constitutes a sale or exchange, as respondent contends, or discharge of indebtedness, as petitioners contend. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice *452 and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Scottsdale, Arizona, at the time they filed their petition. At the time of RDP-3's formation in 1984, Richard Moore (petitioner) contributed $ 25 in cash to RDP-3 in exchange for a 25-percent partnership interest. On September 17, 1984, RDP-3 borrowed $ 5,700,000 (the partnership debt) from Southwest Savings and Loan Association (Southwest) in order to purchase and develop certain real property; petitioner, along with the other partners of RDP-3 and their spouses, guaranteed the partnership debt. Marsha Moore did not guarantee the partnership debt. Petitioner's share of the partnership debt was $ 1,425,000. On September 2, 1987, petitioner sold his interest in RDP-3, as well as interests in other entities, to Arthur Porter (Porter) (who had an interest in each of the entities sold) for $ 80,000 (consisting of $ 20,000 in cash and a note for the balance) plus Porter's assumption of petitioner's obligation with regard to the partnership debt. In connection *453 with the sale, the other co-guarantors of RDP-3's loan signed a Waiver of Contribution in favor of petitioner. At the time of sale, petitioner had a $ 420,066 negative capital account balance in RDP-3. This negative capital account balance arose as a result of petitioner's distributive share of RDP-3's losses during the years 1984 through 1987. These losses relate to office expenses, overhead reimbursables, depreciation, amortization, and rental expenses. Petitioners deducted these losses on their Federal income tax returns for 1984 through 1987 to the extent possible. Following the sale of petitioner's interest in RDP-3 to Porter, RDP-3 continued to make payments on its debt to Southwest. On November 18, 1987, and again on January 1, 1988, Southwest and RDP-3 entered into modification agreements regarding the partnership debt. Petitioner did not sign either of the agreements. Petitioner transferred no property to Southwest either at the time of the sale of his interest in RDP-3 to Porter or at the time the modification agreements were signed. On Schedule D of their 1987 Federal income tax return, petitioners reported petitioner's $ 420,066 negative capital account balance *454 in RDP-3, together with petitioner's negative capital account balances in the other entities sold to Porter, as long-term capital gain. However, by characterizing the reported income as income from discharge of indebtedness, petitioners offset the reported capital gain by claiming an exclusion from income pursuant to section 108 for a like amount. In the statutory notice of deficiency, respondent disallowed the exclusion. OPINION Petitioners contend that a de facto discharge of indebtedness occurred sometime between September 1987, when petitioner sold his interest in RDP-3, and January 1, 1988, the date the second modification of RDP-3's obligation to Southwest was signed, thereby removing petitioner as both a partner and a guarantor of the partnership's debt to Southwest. According to petitioners, Only after petitioner was discharged by Southwest on his obligation for the partnership debt, did petitioner recognize income from the discharge of indebtedness. However, due to the fact that petitioner was insolvent both before and after such discharge, whether it occurred in 1987 or on January 1, 1988, such discharge of indebtedness income is excluded pursuant to sec. 108(a)(1)(B).
*455 Petitioners alternatively contend that "if the Court determines that no discharge of indebtedness occurred either in 1987 or 1988, then petitioner was still liable for the partnership debt of RDP-3 to Southwest and there was no discharge of indebtedness income." We disagree with both of petitioners' contentions. In our opinion, petitioners mischaracterized the transaction involved in this case. The transaction involved was a sale of petitioner's partnership interest in RDP-3 and other entities, and not a discharge of indebtedness. Although, in connection with these sales, the purchaser assumed certain of petitioner's obligations to Southwest, no property transfer was made to Southwest. Nor was there a discharge of petitioner's obligation to Southwest. The sale of petitioner's interest in RDP-3 comes within the purview of section 61; section 108 is not applicable. Section 741 provides: "In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset". Section 752(d) provides: "In the case of a sale or exchange of *456 an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships." It is now well settled that where there is a sale of property encumbered by a mortgage, the seller must include the unpaid balance of the mortgage in the computation of the amount realized on the sale. Crane v. Commissioner, 331 U.S. 1 (1947). This principle applies even when the unpaid amount of the mortgage exceeds the market value of the property sold. Commissioner v. Tufts, 461 U.S. 300 (1983). Section 1001 governs the determination of gain from a transaction such as that which occurred in this case. Pursuant to section 1001(a), the amount of gain to be realized by petitioner with respect to the sale of his interest in RDP-3 is the difference between the "amount realized" on the sale and his adjusted basis for his partnership interest. Section 1001(b) defines the "amount realized". Pursuant to section 1001(b), when recourse liabilities are assumed by a buyer of property, the amount realized includes the amount of the liabilities assumed. *457 Section 1.1001-2(a)(4)(v), Income Tax Regs., provides: "The liabilities from which a transferor is discharged as a result of the sale or disposition of a partnership interest include the transferor's share of the liabilities of the partnership." Thus, in the instant case, the amount realized by petitioner upon the sale of his interest in RDP-3 includes an amount equal to petitioner's share of RDP-3's debt to Southwest which was assumed by Porter. In petitioners' view, petitioner's share of RDP-3's debt to Southwest was not assumed by Porter, but rather was discharged by Southwest. According to petitioners, Arizona law does not allow the debts of a partner to be assumed by a third party without the consent of the lender. Thus, petitioners contend that Porter could not have assumed petitioner's liabilities, and therefore petitioners posit that the amount realized on the transfer of the partnership interest could not include petitioner's share of RDP-3's debt to Southwest. According to petitioners, it was not until after the September 1987 transfer, when Southwest engaged in the modification agreements with RDP-3, which petitioner did not sign, that petitioner's obligation on the *458 partnership debt terminated. Under this view, Southwest "discharged" petitioner's debt on the date of either of the two modification agreements. Petitioners claim petitioner still had basis in his partnership interest after the transfer to Porter, and until Southwest discharged the debt. They contend that the modification agreements resulted in discharge of indebtedness income equal to petitioner's negative capital account balance of $ 420,066. If we accept petitioners' position, we must consider petitioner's solvency in order to examine the application of section 108. As stated previously, we do not agree with petitioners' contentions. Southwest was not a party to the September 1987 transaction between petitioner and Porter. Nor was any property or partnership interest ever transferred to Southwest in connection with that transaction. The two modification agreements, which petitioners claim support their contention that petitioner was discharged from his obligation for RDP-3's debt to Southwest, were made 2 to 4 months after the September 1987 sale. Thus, petitioners' argument for discharge of indebtedness income classification is without merit. Petitioners misread the *459 case law in formulating their arguments. To begin, petitioners cite Weiss v. Commissioner, 956 F.2d 242 (11th Cir. 1992), vacating T.C. Memo. 1990-492. In Weiss, the taxpayer (Weiss) owned a 50-percent interest in a partnership, and David Hillman and two other individuals (the Hillman Group) collectively owned the remaining 50 percent. The partnership agreement obligated Weiss to advance additional moneys to the partnership if the Hillman Group so requested, or else Weiss would forfeit his interest in the partnership. Before forming the partnership, the Hillman Group borrowed $ 1 million. After formation of the partnership, a second lender agreed to participate in $ 300,000 of the loan if Weiss would personally guarantee that amount. Weiss did so. Some time later, Hillman made a capital call to the partners for $ 400,000. Weiss failed to remit his $ 200,000 share of the requested capital, and the Hillman Group acquired his partnership interest. Id. at 243. The Court of Appeals held that both Florida partnership law and the personal guarantee to the participating lender continued to obligate Weiss to repay the *460 $ 300,000 debt. Id. at 245. Weiss is distinguishable from this case. In Weiss, "There was no express agreement between Weiss and the Hillman Group partners relieving Weiss of liability." Id. at 245. In the instant case, there was an agreement between petitioner and Porter under which Porter expressly assumed petitioner's obligation to Southwest. In addition, the other coguarantors of RDP-3's loan signed a Waiver of Contribution in favor of petitioner. Thus, even if petitioner remained liable to Southwest under Arizona law, [1] petitioner could have obtained indemnification from Porter if Southwest sought repayment from petitioner. Petitioners ignore this material distinction and present Weiss as being nearly identical with this case. Similarly, petitioners misread Barker v. Commissioner, T.C. Memo. 1983-643. In *461 Barker, the taxpayer was personally liable for partnership debt of $ 350,000. The taxpayer attempted to withdraw from the partnership, effective December 31, 1975, on the condition that the withdrawal would create no income tax liability. Negotiations for the transfer of the taxpayer's interest continued into 1978, at which time an agreement releasing the taxpayer from personal liability for the $ 350,000 was drawn up. The taxpayer and the remaining partners signed the agreement in 1979. The agreement, by its terms, did not indemnify the taxpayer against any income tax liability arising from the transfer, but the taxpayer's attorney obtained oral assurance from the partnership's attorney that no tax liability would arise. The Internal Revenue Service (IRS) disagreed, and determined a deficiency based on income from the taxpayer's release from the $ 350,000 debt. The taxpayer disputed the effectiveness of the agreement transferring his interest to the partnership. The IRS admitted that the agreement was signed in 1979, and that part of the consideration for the assumption of liability was the settlement of the lawsuit involving the agreement, which was still pending in local *462 court in 1979. We held therein that gain to the taxpayer arising from the assumption of liabilities by the partnership could not have occurred in 1975, because the taxpayer was still liable for the debt at that time. Id. In Barker, there was no assumption agreement in favor of the taxpayer in existence during the year in issue, whereas here there was. Once again, in attempting to analogize Barker to the instant case, petitioners ignore a critical distinction. Our decision in Slavin v. Commissioner, T.C. Memo. 1989-221, supports the position herein taken by respondent. In Slavin, the taxpayer transferred his interests in three partnerships to William Schmadeke, the other partner in the partnerships, in exchange for the assumption of recourse and nonrecourse liability. We held that the taxpayer realized gain from a sale or exchange, not from a discharge of indebtedness. Id. We based our decision on the fact that the agreement between the taxpayer and Schmadeke reflected a sale and on the fact that Schmadeke was not a creditor of the taxpayer. Id. In the instant case, the agreement between petitioner and Porter clearly reflects *463 a sale; Porter was not petitioner's creditor. Accordingly, we agree with respondent's characterization of the $ 420,066 amount in dispute as long-term capital gain, and sustain respondent's determinations relating to that amount. Respondent argues that if any income from the discharge of indebtedness existed in this case, then it arose in addition to the capital gain from the sale of the partnership interest. Respondent presents this argument on brief. Because we find that no discharge of indebtedness occurred in this case, we need not address this argument. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. Because we do not rely on Arizona law for our decision, we make no attempt to interpret the provisions of Arizona law that petitioners rely on.↩