Rawlin L. STOVALL,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 84–5223.

United States Court of Appeals,
Eleventh Circuit.

June 6, 1985.

Lorraine Woods, Chicago, Ill., for plaintiff-appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Michael L. Paup, Chief, Appellate Section, Jonathan S. Cohen, Kenneth L. Greene, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and PECK *, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge:

Appellant Rawlin Stovall appeals from the decision of the United States Tax Court

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

determining a deficiency of $1,386,664 and additions to tax of $346,666 and $69,333 in his 1972 tax year. This court has jurisdiction under 26 U.S.C. § 7482. For the reasons set forth below, we affirm.

In 1972, Stovall was the president and principal shareholder of Stovall and Stovall, Inc., a futures commission merchant registered under the Commodity Exchange Act. He also transacted business in his individual capacity under the name R.L. Stovall, Sole Proprietor, Principal in Cash Commodities. Stovall was a registered broker and a member of the Chicago Board of Trade. He began marketing an investment program in 1972, in his capacity as a sole proprietor, under which investors could open a margin account with an initial $2,000 deposit. Stovall characterized the investment transactions as purchases of "cash commodities for deferred delivery." Investors executed a trading authorization giving Stovall the authorization to buy and sell on their behalf, and a purchase agreement which required the investor to leave any accrued profits in the account for the two years the purchase agreement was effective. The initial deposit, however, was refundable. Investors were also required to execute a management contract that provided for an agent for "professional assistance." A handling fee of $30 per trade was charged to the investors.

Stovall began accepting investors' checks in January 1972. He deposited the checks in various financial institutions in accounts in his own name. He also engaged several independent contractors to solicit investors. Stovall or his employees prepared and sent statements to each investor reporting trading activities made on the investor's behalf.

Stovall did not enter the investors' purchase and sale orders on the competitive floor of an authorized board of trade. Instead, he traded with himself on behalf of his investors by taking the opposite side of the investors' orders that he, as authorized

trade agent, was initiating. In July 1972, Stovall engaged Frank Hackbarth as a trading agent; new contracts executed by investors included authorization for Hackbarth to trade for them. Hackbarth did not communicate directly with the investors. Hackbarth was not compensated for acting as a trading agent; his company, however was retained by Stovall to prepare computerized statements of accounts for the investors. The information included in the statements was provided to Hackbarth by Stovall.

In December 1972, the Commodity Exchange Authority [1] began investigating Stovall's commodities activities. In 1972, Stovall had received $2,181,745.28 from investors and refunded $56,423.50 to them. In January 1973, Stovall ceased operations in his own name and under Stovall and Stovall, Inc. Stovall's brother and attorney formed the corporation of American Cash Commodities of Missouri, Inc. ("American"). Investors' funds on deposit with Stovall were transferred to American's bank accounts; thereafter, Stovall's investors traded with American pursuant to contracts with American and the investors. Stovall was president of American.

During 1973, Stovall made numerous withdrawals from American's accounts, but not to pay for commodities bought by investors. He used the funds to purchase Treasury bills for $484,547.19 and certificates of deposit, held in his name, with a face value of $900,000. He paid money to himself to purchase silver; checks payable to him totalling $3,910,574 were drawn on one account. He transferred funds to his brother-in-law's corporation; the funds were used to build houses in Virginia to which Stovall's sister received the titles. Operating expenses of his commodities business, as well as his legal fees and bail bond, were paid from the accounts. In 1973, investors paid approximately $7,303,693.13 to American and received $672,241.13 in refunds. In 1973, American paid

---

1. During the years in issue, the Commodity Exchange Authority of the Department of Agriculture was the agency charged with administering the Commodity Exchange Act, 7 U.S.C. § 1 *et*

*seq.* In April 1975, the Commodity Futures Trading Commission, an independent regulatory agency, succeeded to the operations of the Commodity Exchange Authority.

$246,831 in operating expenses, $221,070 in deductible legal fees, and $870,960 in commission expenses.

A complaint charging Stovall individually and Stovall and Stovall, Inc. with numerous violations of the Commodities Exchange Act was filed in January 1973. After a full evidentiary hearing, an administrative law judge held that Stovall was guilty of violating various provisions of the Commodity Exchange Act because Stovall had dealt in commodity futures contracts without being registered to do so, had failed to execute futures contracts on a designated contract market, and had taken the opposite side of his customers' orders when acting as an agent for them and principal for himself. The administrative law judge revoked the registrations of Stovall and of Stovall and Stovall, Inc., and suspended Stovall's trading privileges for two years. Stovall appealed to the Commodity Futures Trading Commission, which affirmed the findings of the administrative law judge and extended revocation of Stovall's privileges to five years. *In re Rawlin L. Stovall and Stovall and Stovall, Inc.*, [1977–1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,941 (CFTC 1979).

In connection with the same investment scheme, Stovall was indicted by a Grand Jury sitting in the Northern Judicial District of Illinois on criminal charges involving mail fraud and perjury. A plea agreement was entered into whereby Stovall agreed to plead guilty to one count of perjury and nolo contendere to the mail fraud counts. Stovall was placed on probation for five years and as conditions thereof was prohibited from trading in commodities and ordered to make restitution to the investors.

Various civil suits filed by investors against Stovall and American were consolidated into a class action, and all funds arising from Stovall's and American's investment activities were placed under the control of the United States District Court for the Northern District of Illinois. The parties ultimately reached a settlement agreement.

In the present action, the Commissioner of Internal Revenue issued a notice of deficiency to Stovall charging him with income in 1972 and 1973 equal to the net amounts either he or American received for investment in commodities. The Commissioner also asserted additions to tax under 26 U.S.C. § 6651(a) for failure to file timely returns for 1972 and 1973 and under 26 U.S.C. § 6653(a) for negligence or intentional disregard of rules and regulations for those years. Stovall filed a petition for redetermination of the deficiencies and also sought a review of the additions to tax for 1972 and 1973. Before the Tax Court, the Commissioner argued that Stovall's investment activities were fraudulent and the proceeds were therefore income to him. Further, the Commissioner contended that American was a sham corporation and should be disregarded for purposes of determining Stovall's 1973 tax liability. Stovall maintained that his activities were not fraudulent and that American was a separate viable entity that conducted legitimate business activities. The Tax Court held that the amounts paid to Stovall in 1972 by the investors constituted taxable income to him. As to the 1973 deficiencies, the court held that American was a separate taxable entity and Stovall was thus not liable for deficiencies asserted against him with regard to 1973. Further, the Tax Court held that Stovall was liable for the additions to tax asserted for 1972, but not for 1973. The Commissioner has not appealed the Tax Court's decision with regard to Stovall's 1973 tax liability; Stovall appeals from the decision insofar as the court held that he was liable for the deficiency and additions to tax for 1972.

### 1972 Deficiency

The principal issue before this court is whether the amounts paid to Stovall by investors in 1972 constituted taxable income to him. The Tax Court held that Stovall exercised complete dominion over the funds within the meaning of *Commissioner v. Glenshaw Glass*, 348 U.S. 426, 431, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955), so as to constitute income under 26 U.S.C.

§ 61. The underlying facts in this case are basically not in dispute; the parties entered into an extensive agreement of stipulation of facts. Generally, the Tax Court's findings of facts are subject to the "clearly erroneous" standard of review prescribed by Fed.R.Civ.P. 52(a). However, whether the deposits Stovall received from the investors were income is an ultimate fact and as such is to be treated as a legal rather than a factual determination, and is subject to "normal appellate review." *See Steffens v. Commissioner*, 707 F.2d 478 (11th Cir. 1983); *Reese v. Commissioner*, 615 F.2d 226, 230 n. 5 (5th Cir.1980). Thus, the function of this court is to determine whether there is substantial evidence on the record as a whole to support the Commissioner's conclusion that the investors' deposits in 1972 constituted income to Stovall.

■ We have reviewed the lengthy, detailed opinion of the Tax Court. The judge made detailed findings of fact which are fully supported by the record. The Tax Court then determined that Stovall had the full economic benefits of the deposits within the meaning of *Glenshaw Glass, supra,* because:

1. He had unfettered physical access to the funds on deposit;

2. He, or persons controlled by him, had the authority to make trades on behalf of the accounts;

3. He had the complete ability to manipulate the trades to derive personal profit at the expense of the depositors, and

4. He had the ability to, and actually did, divert funds to his own use.

*Stovall v. Commissioner*, T.C. 1983–450 pp. 20–21 (1983).

Stovall now makes the bold assertion that the Tax Court erred in considering his activities in 1973 to determine his tax liability for 1972; he contends that his 1973 activities with respect to investors' deposits received in 1972 are not relevant to the determination of his 1972 tax liability. Obviously Stovall's 1973 activities are relevant to determine whether he had such control over the funds as to constitute income within the meaning of § 61.

The Tax Court also pointed out that Stovall failed to observe federal regulations in effect in 1972 which required him to deposit the investors' funds with a financial institution in accounts clearly reflecting the ownership of the amounts therein. Commodity and Securities Exchange, 17 C.F.R. § 1.20(a) (1972). As the Tax Court noted, Stovall complied with none of the applicable regulations; rather, he deposited the sums and purchased investments in his own name. The court further determined that the findings of the administrative law judge, which were specifically adopted by the Commodity Futures Trading Commission, were entitled to collateral estoppel under the standards set forth in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).[2] The Tax Court also noted that Stovall failed to keep records that would accurately reflect his equity in the inves-

**2.** Stovall argues that the Tax Court erroneously applied the doctrine of collateral estoppel to the findings of fact of the administrative law judge rather than the factual determinations of the Commodity Futures Trade Commission. Stovall is incorrect, however, in his assertion that the Commission did not adopt the findings of fact made by the administrative law judge. The Commission stated: "In reaching our decision, we rely upon, and adopt as our own, the Administrative Law Judge's findings of fact." Further, Stovall's argument ignores the statement of the Tax Court that "even without the collateral estoppel effects of the previous decision, however, we would not be convinced of the bona fides of petitioner's operation...." Stovall's concern

with the application of the doctrine of collateral estoppel sidesteps the question of whether the Tax Court, based on the stipulation of facts and evidence before it, properly determined whether his actions evinced a recognition of an obligation to repay the investors.

Similarly, Stovall asserts that the Tax Court improperly relied upon his plea of nolo contendere in the criminal action in reaching its decision in the present case. The Tax Court, however, merely observed in its findings of facts that a criminal prosecution had occurred and what the results were. Indeed, the court only recited what was included in the parties' stipulation of facts; the nolo contendere plea played no role in the court's decision.

tors' accounts. The court concluded that Stovall's actions were inconsistent with his claims that he was operating a bona fide cash commodities business. We find nothing in the record to convince us that this conclusion is erroneous. Accordingly, we hold that there is substantial evidence to support the Commissioner's determination that the investors' 1972 deposits constituted income to Stovall.

### Additions to Tax

 Stovall failed to file a tax return for 1972. Before the Tax Court, he asserted that he reasonably relied on the advice of his accountant, who had advised him that no return need be filed. As the Tax Court stated, Stovall bears the burden of proof on both the issue of addition to tax under § 6651(a) for failure to file timely his tax return and for addition under § 6653(a) for negligent or intentional disregard of rules and regulations. *Bixby v. Commissioner*, 58 T.C. 757, 791 (1972); *Fischer v. Commissioner*, 50 T.C. 164, 177 (1968). The Tax Court sustained the Commissioner's determination with respect to § 6651(a), holding that Stovall failed to establish reasonable reliance because he did not prove that he had provided his accountant with sufficient knowledge of the true nature and extent of his commodities activities to make an informed decision. As to the additions to tax under § 6653(a), the court held that Stovall's failure to keep adequate books and records as required by 26 U.S.C. § 6001 and the regulations thereunder constituted clear negligence.

On appeal, Stovall contends that the addition of penalties was erroneous because he actually had an operating loss for 1972. This position, however, is premised on the view that the money received from investors in 1972 was not income. In light of our above holding that the amounts received from investors constituted income to Stovall in 1972, Stovall's contention does not require discussion. Stovall has made no attempt to persuade this court that his reliance on his accountant's advice was reasonable or that he kept adequate books and records, nor does anything in the record

convince us that the Commissioner incorrectly determined that Stovall was liable for the additions to tax under § 6651(a) and § 6653(a).

Accordingly, the decision of the Tax Court is AFFIRMED.