T.C. Memo. 1997-189


UNITED STATES TAX COURT


ROBERT P. PETROCINE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 15828-94, 5424-95.     Filed April 23, 1997.


Robert P. Petrocine, pro se.

<u>Julia A. Roy</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  Respondent determined deficiencies, an addition to tax, and accuracy-related penalties with respect to petitioner's 1991 and 1992 Federal income taxes as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|----------------------------------------|
| 1991 | $15,983 | $2,693 | $3,196 |
| 1992 | 8,798 | -- | 1,760 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement, the issues for decision in these consolidated cases are: (1) Whether petitioner may exclude from gross income a $37,767 bonus received from his employer; (2) whether petitioner may deduct $5,433 as an investment interest expense; (3) whether petitioner has substantiated $31,796 in claimed business expenses; (4) whether, for 1992, petitioner is entitled to "single" filing status; (5) whether petitioner is subject to the alternative minimum tax; and (6) whether petitioner is liable for the addition to tax and the accuracy-related penalties.

                    FINDINGS OF FACT

Many of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Verona, New Jersey.

In 1988, petitioner was employed as a stockbroker by Dean Witter Reynolds, Inc. (Dean Witter). As an inducement for and

upon commencement of his employment, petitioner received $103,000 as a loan from Dean Witter. As reflected in a promissory note signed by petitioner, beginning in 1989 this loan was to be repaid by petitioner in three annual installments of approximately $34,333 each, plus 10-percent annual interest, for a total annual payment due of $37,767.

Under the terms of the loan agreement, as long as petitioner worked for Dean Witter during 1989 through 1991, petitioner would receive a yearend bonus in the amount of $37,767, which petitioner was required to return to Dean Witter, via a personal check, in order to cover the annual $37,767 payment due on the $103,000 loan from Dean Witter. Of the $37,767 annual payment due, $3,433 reflected interest due on the loan.

On his 1988 Federal income tax return, petitioner did not report the $103,000 loan proceeds received as income. For 1988, Dean Witter also apparently treated the $103,000 as a loan to petitioner.

For 1989 and 1990, the record does not indicate how petitioner and Dean Witter treated the $37,767 yearend bonuses received by petitioner. For 1991, Dean Witter included the $37,767 yearend bonus paid to petitioner in the "wages" portion of the Form W-2 that it issued to petitioner for 1991.

On August 2, 1991, petitioner filed for bankruptcy. Petitioner's bankruptcy proceedings were closed on December 23, 1991.

In 1991, petitioner apparently incurred an additional $2,000 in interest expense, but the record does not indicate to what debt this $2,000 is attributable.

In 1992, petitioner incurred $9,740 in expenses relating to his membership in the Glen Ridge Country Club (the Club). Petitioner frequently played golf and socialized with other members of the Club, for approximately 80 percent of whom petitioner performed stock brokerage services. On the Club's records, the $9,740 in expenses that petitioner incurred at the Club in 1992 is reflected only by general category of expense, and petitioner has provided no other records relating to these expenses.

Also during 1992, petitioner apparently incurred an additional $24,796 in expenses for, among other things, travel, business periodicals, and legal advice on investment matters. Petitioner has not provided any records itemizing the specific nature or purpose of these expenses.

On December 21, 1992, petitioner and his wife appeared in the Superior Court of New Jersey, Chancery Division--Family Part, Essex County for the purpose of obtaining a divorce. In court on December 21, 1992, petitioner and his wife agreed to and executed a court-approved property settlement agreement, and the court orally granted petitioner and his wife a divorce.

The proposed form for the judgment of divorce (divorce decree) that was submitted by the parties to the court had typed

on its face as the date of entry for the judgment "_____ day of December, 1992".

On February 4, 1993, the written divorce decree was entered by the judge. On the written decree, the judge crossed out "____ day of December, 1992", and wrote in "4th day of February, 1993".

On petitioner's 1991 Federal income tax return, the $37,767 bonus that petitioner received from Dean Witter in 1991 was reported as taxable wages. Petitioner also claimed $76,243 in itemized deductions, including $5,433 as an investment interest expense. Despite large deductions claimed on petitioner's 1991 Federal income tax return, no calculation of an alternative minimum tax was reflected on the return.

Petitioner timely requested an automatic extension to file his 1991 Federal income tax return, but petitioner failed to properly estimate and make a payment of tax with the extension request. On August 14, 1992, petitioner filed his 1991 Federal income tax return as a married person filing separately from his spouse.

On August 18, 1993, petitioner timely filed a 1992 Federal income tax return. On his 1992 Federal income tax return, petitioner claimed, among other things, that his filing status was "single", and petitioner claimed $31,796 in deductions, as indicated in the schedule below:

| Type of Expense | Amount Claimed |
|---|---|
| Vehicle | $10,096* |
| Business | 3,450** |
| Meals and Entertainment | 7,000*** |
| Miscellaneous | 11,250**** |
| Total | $31,796 |

* Includes claimed travel mileage (miles x 28 cents), parking fees, tolls, and other local transportation.

** Not explained.

*** Includes claimed expenses associated with the Club (after statutory 2-percent floor).

**** Includes claimed expenses associated with periodicals, clerical help, and legal advice regarding investment matters.

On audit, with regard to petitioner's 1991 Federal income tax return, respondent refused to allow petitioner to recharacterize the $37,767 bonus as nontaxable loan proceeds. Based on petitioner's lack of investment income, respondent disallowed petitioner's claimed $5,433 investment interest expense deduction for 1991. Respondent also determined that, based on calculations resulting in a tentative minimum tax equaling $33,080 and a regular income tax equaling $22,807, petitioner was subject to the alternative minimum tax (AMT) and owed additional income tax thereunder.

Also for 1991, respondent determined an addition to tax for petitioner's failure to timely file his Federal income tax return.

With respect to petitioner's 1992 Federal income tax return, based on lack of substantiation, respondent disallowed all but $9,138 of petitioner's claimed $31,796 expenses.

Also for 1992, on the ground that petitioner's divorce did not become final in 1992, respondent determined that petitioner had incorrectly identified his filing status on his 1992 Federal income tax return as "single", and respondent recalculated petitioner's income tax using the rate applicable to married persons filing separately. Finally, respondent determined accuracy-related penalties under section 6662(a) for 1991 and 1992.

OPINION

1991 -- $37,767 Bonus

Income includes compensation for services. Sec. 61(a); sec. 1.61-1(a)(1), Income Tax Regs. Funds received as loans, however, are not properly treated as taxable income. James v. United States, 366 U.S. 213, 219 (1961).

Petitioner argues that the $103,000 received from Dean Witter in 1988 constituted a "forgivable" rather than a bona fide loan, that the $103,000 should have been included in his income in 1988, and that because of his obligation to immediately transfer back to Dean Witter the annual $37,767 bonus to be received, the $37,767 bonus petitioner received in 1991 should be treated as nontaxable "illusory" income.

Respondent argues that in 1988 the $103,000 was properly treated as a bona fide loan from Dean Witter to petitioner and that the $37,767 bonus received by petitioner in 1991 was properly included in petitioner's taxable income in 1991.

The evidence indicates that the $103,000 that petitioner received from Dean Witter in 1988 constituted a loan, not compensation for services to be rendered. There existed a good-faith agreement between Dean Witter and petitioner that the $103,000 petitioner received from Dean Witter in 1988 would be repaid.

The evidence further indicates that the $37,767 bonus petitioner received in 1991 from Dean Witter constitutes taxable income to petitioner for services rendered by petitioner to Dean Witter. Dean Witter properly included the $37,767 bonus as wages on petitioner's 1991 Form W-2, and petitioner properly treated the $37,767 bonus he received in 1991 as taxable income on his 1991 Federal income tax return.

## 1991 -- Claimed Investment Interest Expense

Section 163 allows taxpayers a deduction for the payment of interest on indebtedness allocable to property held for investment. Sec. 163(a), (d)(1), (3)(A).

Petitioner argues in the alternative to the above argument that the $3,433 interest payment he made to Dean Witter with respect to the $103,000 loan constitutes a deductible investment

interest expense because that interest payment related to the $103,000 he received from Dean Witter, which petitioner claims he used for investment purposes.

Petitioner has not established that he used the $103,000 loan proceeds for investment purposes. Petitioner fails to make any argument regarding the remaining $2,000 in claimed interest expense. Petitioner has failed in his burden of proof on this issue.

We sustain respondent's disallowance of petitioner's $5,433 claimed investment interest expense deduction for 1991.

1992 -- Claimed Business and Other Deductions

Section 274(a) and (d) allows deductions for certain meal and entertainment expenses, including dues for membership in social clubs. To be deductible, such expenses must be directly related to taxpayers' active conduct of a trade or business.

With regard to business expenses for meals and entertainment, section 274(a) limits the deduction to those expenses incurred directly preceding or following a bona fide business discussion relating to the taxpayers' active conduct of a trade or business. Sec. 274(a)(1)(A) and (2)(A).

The substantiation required for meal and entertainment expenses should include the nature (including the amount, time, and place of the meal or entertainment), the business purpose of the claimed business expense, and the business relationship to

the taxpayers of the person being entertained.  Sec. 274(d).
Unsupported, self-serving testimony and vague approximations by
taxpayers regarding expenditures for meals and entertainment
generally will not constitute sufficient substantiation.  Geiger
v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per
curiam T.C. Memo. 1969-159.

Under certain circumstances, when taxpayers establish that
they have incurred a trade or business expense but do not
substantiate the amount of the expense, this Court may estimate
the amount of deductible business expenses (the Cohan rule).
Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), affg.
in part and remanding in part 11 B.T.A. 743 (1928).  The estimate
must, however, have some reasonable evidentiary basis.  Vanicek
v. Commissioner, 85 T.C. 731, 743 (1985).  Where, however,
section 274(d) (regarding meal, entertainment, and travel
expenses) applies, the Cohan rule is inapplicable.  Sanford v.
Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412
F.2d 201 (2d Cir. 1969).

With respect to dues for club memberships, taxpayers must
establish that the club was used primarily for the furtherance of
the taxpayers' trade or business and that the dues were directly
related to the active conduct of the taxpayers' trade or
business.  Sec. 274(a)(2)(C).

Taxpayers generally bear the burden to substantiate claimed meal, entertainment, and travel expenses. Sec. 274(d)(1) and (2); Rule 142(a).

Petitioner argues that because he worked solely on commission as a stockbroker, all of his time spent at the Club involved either the solicitation of potential clients or the conduct of business with current clients, and therefore that the $7,000 (after the statutory 2-percent adjustment) claimed as business expenses incurred at the Glen Ridge Country Club should be allowed.

Respondent argues that petitioner has adequately substantiated only $9,138 of the total $31,796 claimed expenses.

With respect to petitioner's claimed business expenses incurred at the Club, petitioner has failed to offer any credible documentation to support the deduction of these expenses. Petitioner's records from the Club that are in evidence indicate only the general category of expenses petitioner incurred, and petitioner offers no records or other verification relating the specific expenses incurred to specific business-related activity.

With respect to petitioner's other claimed expenses, we find the record devoid of any documentation or other basis to support any credible estimate. Cohan v. Commissioner, supra.

Petitioner has failed to meet his burden of proving that he is entitled to any of the above claimed expense deductions other than the $9,138 that respondent has allowed.

1992 -- Filing Status

A taxpayer's filing status is determined as of the close of the year and generally turns on whether the taxpayer is legally separated from his or her spouse under a decree of divorce. Secs. 2(b)(2)(B), 7703(a)(1). Generally, the State law of the marital domicile controls the determination of whether a taxpayer is legally separated under a decree of divorce. Dunn v. Commissioner, 70 T.C. 361, 365-366 (1978), affd. without published opinion 601 F.2d 599 (7th Cir. 1979).

Generally, under the law of New Jersey, a judgment does not take effect before it is entered. N.J. Ct. C.P.R. 4:47. An exception to this rule is when the court in the written judgment specifies that the judgment will take effect from the time it is signed. Id.

Another exception under New Jersey law permits a judgment to be effective nunc pro tunc when, at the close of a proceeding, a court, orally or in some other manner, clearly and conclusively decides the outcome of the proceeding. Mahonchak v. Mahonchak, 459 A.2d 1207, 1208-1209 (N.J. Super. Ct. App. Div. 1983). If it "is clear that upon the close of the divorce trial the court made a definitive adjudication of the controversy, reflecting its conclusive determination that each party be granted a divorce[,] * * * we [the New Jersey courts] subscribe to the view that the entry of a written judgment is essentially a non-discretionary

act by [which evidence of the judicial act is] recorded." Parker v. Parker, 319 A.2d 750, 751 (N.J. Super. Ct. App. Div. 1974); see also Mahonchak v. Mahonchak, supra at 1208 ("It is well settled that the oral pronouncement of a judgment in open court on the record constitutes the jural act and that the entry of the written judgment is merely a ministerial memorialization thereof").

The evidence establishes that in court on December 21, 1992, the divorce court judge orally pronounced petitioner and his wife divorced. Under the law of New Jersey, such a pronouncement is sufficient to render a divorce judgment effective nunc pro tunc. We conclude that, for Federal income tax purposes, petitioner was divorced from his wife as of December 21, 1992, qualifying petitioner to file his 1992 Federal income tax return as a single taxpayer. Mahonchak v. Mahonchak, supra at 1208-1209.

1991 -- AMT

The AMT was established to prevent high income taxpayers from using large amounts of deductions and credits to reduce their taxable income to a lower tax bracket than that of taxpayers who have more modest taxable income. 1 Mertens, Law of Federal Income Taxation, sec. 2A.01, at 1 (1990). The AMT applies to the extent that taxpayers' tentative minimum tax exceeds the taxpayers' regular income tax. Sec. 55(a).

In the instant case, petitioner argues that the AMT does not apply because the $37,767 bonus received from Dean Witter in 1991 that petitioner originally reported on his 1991 Federal income tax return constituted "illusory" income that incorrectly was included in his taxable income for 1991. If the $37,767 bonus were excluded from his taxable income, the AMT would not be triggered.

We have already concluded that the $37,767 bonus received by petitioner in 1991 is includable in petitioner's taxable income. We sustain respondent's determination with regard to the AMT.

## 1991 and 1992 Addition to Tax and Accuracy-Related Penalties

Section 6651(a) imposes an addition to tax for the failure of taxpayers to timely file Federal income tax returns, unless the failure is due to reasonable cause. Sec. 6651(a)(1). Whether reasonable cause exists is a question of fact. United States v. Boyle, 469 U.S. 241, 249 n.8 (1985). Reasonable cause for failure to timely file tax returns may exist where taxpayers prove that they exercised ordinary business care and prudence and were nevertheless unable to file the returns within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Filing extensions are taken into account in determining whether tax returns are timely filed. Sec. 6651(a)(1). For an extension to be valid, however, generally the amount of tax due should be properly estimated and the estimated tax should be

remitted with the extension request.  Sec. 1.6081-4, Income Tax Regs.  Taxpayers "properly estimate" the tax liability when a bona fide and reasonable estimate of tax liability is made based on information available at the time of the request for the extension.  Crocker v. Commissioner, 92 T.C. 899, 908 (1989). Reliance on invalid extensions of time to file tax returns will not generally constitute reasonable cause for taxpayers' failure to timely file tax returns.  Id. at 913.

Because petitioner failed to properly estimate his Federal income tax due for 1991, petitioner's request for extension of time to file a 1991 Federal income tax return was invalid. Because petitioner's extension was invalid, petitioner's 1991 Federal income tax return was untimely filed, and petitioner has not shown reasonable cause for his failure to properly estimate his 1991 Federal income tax and therefore to timely file his 1991 Federal income tax return.  We sustain respondent's imposition of the addition to tax for the late filing of petitioner's 1991 Federal income tax return.

For 1991 and 1992, respondent imposed accuracy-related penalties equal to 20 percent of the portion of petitioner's underpayment in tax attributable to negligence (namely, with respect to 1991, the disallowed $5,433 investment interest expense and petitioner's failure to reflect on the return his liability for the AMT; with respect to 1992, the disallowed

business and other expense deductions claimed). Sec. 6662(a) and (b)(1).

Negligence may be indicated by the failure to make a reasonable attempt to comply with the Internal Revenue Code provisions and supporting regulations, to exercise ordinary and reasonable care in preparing a tax return, to keep adequate books and records, or to properly substantiate items. Sec. 1.6662-3(b) and (c), Income Tax Regs. Negligence also may be indicated by the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985).

The accuracy-related penalties do not apply to any portion of underpayments for which there was reasonable cause and with respect to which taxpayers acted in good faith. Sec. 6664(c); sec. 1.6664-4(a), Income Tax Regs. Taxpayers generally have the burden of showing that they were not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioner argues, with regard to the accuracy-related penalties for 1991 and 1992, that his bankruptcy and his divorce made it difficult for him to maintain adequate records regarding his claimed business expenses and establish reasonable cause for the errors on his income tax returns.

With respect to the accuracy-related penalties for 1991 and 1992, petitioner offers no credible evidence with regard to the disallowed investment interest expense item for 1991, the

calculation of his AMT liability for 1991, or the claimed business and other expense deductions for 1992 not allowed by respondent.  Petitioner has not established his lack of negligence in this case with respect to these items.  Sec. 6001; Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Crocker v. Commissioner, supra at 917. We sustain respondent's determination of the addition to tax under section 6651(a) and the accuracy-related penalties under section 6662(a).

To reflect the foregoing,

Decisions will be entered

under Rule 155.