T.C. Memo. 2001-187

UNITED STATES TAX COURT

PAUL A. BILZERIAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10201-95.                    Filed July 24, 2001.

Paul A. Bilzerian, pro se.

<u>Michael A. Pesavento</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined additions to
petitioner's[1] 1986 Federal income tax as follows:

---

[1]Petitioner and his wife, Terri L. Steffen, filed a joint
return for 1986.  Separate notices of deficiency were sent to
petitioner and Ms. Steffen and separate petitions were filed.
This Opinion addresses the liability of petitioner.

| Additions to tax | |
| --- | --- |
| Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) |
| $100,233 | 50% of the interest due on $2,004,465 |

After concessions,[2] the issue for decision is whether petitioner is liable for additions to tax for negligence pursuant to section 6653(a)(1)(A)[3] and (B) for the taxable year 1986.

On September 11, 1998, respondent moved, pursuant to Rule 91(f), to compel petitioner to enter into a proposed stipulation of facts. We ordered petitioner to show cause why the matters covered by respondent's motion should not be deemed admitted for purposes of this case. Petitioner failed to respond to the order to show cause. We, therefore, granted respondent's motion and deemed the matters contained in the proposed stipulation to be facts for purposes of this case. Rule 91(f).

## FINDINGS OF FACT

Petitioner resided in Tampa, Florida, at the time he filed his petition.

Petitioner graduated from Stanford University. After graduating from Stanford, he attended Harvard University and graduated in 1977 with a master's degree in business

[2]Petitioner concedes that he is not entitled to carry back a worthless stock loss of $23,366,705 from 1989 to 1986.

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

administration.  After graduating from Harvard, petitioner worked in the real estate business.  In 1982, he began trading securities.  Before 1987, petitioner either explored the possibility of taking over control, or attempted to take over control, of several publicly traded companies, including Hammermill Paper Co. (Hammermill), Armco, Cluett Peabody, H.H. Robertson, and Syntex Corp.

In 1986, petitioner and Earl and Billy Mack (the Macks) formed a partnership, Bilzerian & Mack Associates (Bilzerian & Mack), for the purpose of launching a takeover of Hammermill. Petitioner was a general partner of Bilzerian & Mack, and he signed the partnership return for 1986 on March 23, 1987.  Mack Asset Co. and Bilzerian Investors, two partnerships, were reported on Bilzerian & Mack's 1986 Form 1065, U.S. Partnership Return of Income, as other general partners.  Petitioner was involved in Bilzerian Investors and another partnership named Bilzerian Ventures.  Although Hammermill was eventually acquired by International Paper Co. in August of 1986, petitioner realized substantial gains in 1986 through Bilzerian & Mack, Bilzerian Investors, and Bilzerian Ventures from the purchase and sale of Hammermill stock.

During 1986, petitioner also maintained interests in South Bay Fashion Center and South Bay Fashion One, two partnerships, and various other entities.

For the taxable year 1986, petitioner was involved in the preparation of Federal income tax returns for some of the entities he was involved in.  Additionally, a former accountant from Price Waterhouse worked full time in petitioner's office handling some of the returns.  Peat, Marwick, Mitchell & Co., C.P.A.s (Peat Marwick) prepared partnership tax returns for Bilzerian & Mack, Bilzerian Investors and Bilzerian Ventures. Another accountant and a tax attorney were involved in preparing tax returns for other entities which petitioner was involved in.

While Peat Marwick was not engaged by petitioner to prepare or do any work on the 1986 individual income tax return, Peat Marwick did prepare a schedule, entitled "Paul Bilzerian's 1986 Tax Estimate".  This schedule was prepared for the purpose of helping petitioner make an estimated tax payment for 1986.  The schedule reported the following gains from petitioner's stock dealings in Hammermill:

| Item | Amount |
|------|--------|
| Bilzerian & Mack | $1,840,003 |
| Bilzerian Investors | 10,216,579 |
| Bilzerian Ventures | 3,107 |
| Personal Gain | 4,170,093 |
| Total | 16,229,782 |

On June 15, 1987, petitioner signed and filed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, for the taxable year 1986, along with a payment of $5 million.  Petitioner was in possession of the schedule prepared by Peat Marwick at that time.  On August

12, 1987, petitioner filed a Form 2688, Application for Additional Extension of Time to File U.S. Individual Income Tax Return.

On October 15, 1987, petitioner filed his 1986 Form 1040, U.S. Individual Income Tax Return. On Schedule E, Supplemental Income and Loss, petitioner reported the following net income from petitioner's stock dealings in Hammermill:

| Item | Amount |
| --- | --- |
| Bilzerian & Mack | $1,840,003 |
| Bilzerian Investors | 10,216,579 |
| Bilzerian Ventures | 3,107 |
| Total | 12,059,689 |

On the Schedule C, Profit or Loss from Business, petitioner reported gross income of $8,063,277 from the sale of securities.[4] On the Form 1040, petitioner reported adjusted gross income and tax liability of $6,099,966 and $3,005,166, respectively. Petitioner reported an overpayment of tax of $2,053,708.

Petitioner's 1986 individual tax return was prepared by Dwight Norris (Mr. Norris). Mr. Norris prepared petitioner's individual tax returns for the taxable years 1982 through 1986. Mr. Norris also prepared partnership tax returns for 1986 for South Bay Fashion Center and South Bay Fashion One.[5] Mr. Norris graduated from Ohio State University in 1956 and has been working

---

[4]Petitioner reported deductions of $14,101,394, resulting in a net loss of $6,038,117.

[5]In 1982, Mr. Norris was a business partner with petitioner in South Bay Fashion One.

as a certified public accountant since that time.  At the time he prepared petitioner's 1986 return, Mr. Norris worked for the accounting firm of Porterfield & Co., C.P.A.s, located in Sacramento, California.[6]  In connection with his preparation of petitioner's 1986 tax return, Mr. Norris received a package of information from petitioner's office consisting of Schedules K-1[7] and other various schedules necessary to prepare petitioner's individual return, including the schedule prepared by Peat Marwick.

In the fall of 1988, Mr. Norris was contacted by Mike Shaw (Mr. Shaw), an attorney representing Mr. Norris at the time, concerning an omission of income on petitioner's 1986 return.  As a result, Mr. Norris learned that petitioner had failed to include $4,170,185[8] of taxable income from gain realized by petitioner from the purchase and sale of Hammermill stock.  Mr. Norris informed petitioner of this.  Mr. Shaw was alerted to the omission of income on petitioner's 1986 return by an agent of the Federal Government.

---

[6]At the time of trial, Mr. Norris resided in California.

[7]A Schedule K-1 is a schedule attached to a Form 1120S, U.S. Income Tax Return for an S Corporation, or a Form 1065, U.S. Partnership Return of Income, to report a shareholder's or a partner's share of income, credits, deductions, etc., from the S corporation or the partnership.

[8]The total omission from income was reduced to $4,008,928, due to miscellaneous adjustments.

At petitioner's request, Mr. Norris prepared an amended return for petitioner for 1986. On January 5, 1989, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1986. On the Form 1040X, petitioner increased his taxable income by $4,008,928 and reported adjusted gross income and total tax liability of $10,108,894 and $5,009,631, respectively. The increase to income was described on petitioner's amended return as follows:

```
NET CHANGE TO INCOME                  Federal

ADJUSTMENTS TO SCHEDULE C
     INCOME FROM SALES               4170185
     INTEREST EXPENSE                -161257

ADJUSTMENTS TO SCHEDULE B
     INTEREST INCOME
            ADD JEFFRIES & CO             91
            LESS ON SCHEDULE C           -91

                                     4008928
```

On December 21, 1988, petitioner was indicted by a Federal grand jury on charges that he conspired to defraud the Internal Revenue Service and the Securities and Exchange Commission (SEC) with respect to several of his attempted corporate acquisitions which he engaged in during the 1980s. The charges related to transactions petitioner carried out between April 1985 and November 1986. The nine-count indictment charged petitioner with misrepresenting the source of funds used to purchase stock on Schedule 13D filed with the SEC (funds were not personal), accumulating stock in the name of nominees (parking securities),

making numerous false statements, and creating false invoices to substantiate false deductions on his 1985 Federal income tax return. On September 27, 1989, the United States District Court for the Southern District of New York entered a judgment of conviction on all the counts contained in the indictment, and the judgment was affirmed by the Court of Appeals for the Second Circuit. United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991).

On October 21, 1991, respondent issued a notice of deficiency to petitioner for the taxable year 1986. In the notice of deficiency, respondent determined that petitioner was liable for additions to tax for negligence due to the omission from the originally filed 1986 return of the approximately $4 million of taxable income from gains related to the purchase and sale of Hammermill stock. Petitioner filed a petition to this Court seeking a redetermination.

In 1992, petitioner sued Mr. Norris for malpractice for the omission of the $4 million of taxable income from petitioner's originally filed 1986 return. In connection with the malpractice lawsuit, Mr. Norris denied any liability with respect to the preparation of petitioner's 1986 tax return.

## OPINION

As in effect for 1986, section 6653(a)(1)(A) imposed an addition to tax equal to 5 percent of the underpayment of tax

where any part of the underpayment was due to negligence or disregard of rules or regulations.  Section 6653(a)(1)(B) imposed an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which was attributable to negligence. Negligence within the meaning of section 6653(a) has been defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985) (citing Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)).  Respondent's determination is presumed correct, and petitioner bears the burden of proving that he was not negligent.  Rule 142(a); Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioner claims that he provided his accountant, Mr. Norris, with all necessary information to prepare an accurate tax return and that Mr. Norris mistakenly omitted the $4 million of taxable income from the return.  Petitioner contends that he reviewed the return before signing and filing it, but he did not notice any errors.  Respondent argues that petitioner knew of the omission of the $4 million of taxable income at the time he filed the original return for 1986.  Respondent claims that even if

petitioner supplied Mr. Norris with the necessary information to file an accurate return, he has not shown that the incorrect return was a result of Mr. Norris's mistake. Respondent argues that an omission of $4 million in these circumstances is so substantial that petitioner could not have reasonably relied on the return and should have made further inquiries as to its accuracy.

The general rule is that taxpayers have a duty to file complete and accurate tax returns and cannot avoid this duty by placing responsibility with an agent. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). However, in limited situations, the section 6653(a) additions to tax may be avoided if the taxpayer shows good faith reliance on the advice of a competent and experienced accountant or attorney in the preparation of the tax return. Weis v. Commissioner, 94 T.C. 473, 487 (1990); Conlorez Corp. v. Commissioner, 51 T.C. 467, 474 (1968). In order to show good faith reliance, the taxpayer must establish that all necessary information was supplied to the return preparer and that the incorrect return resulted from the preparer's mistakes. Weis v. Commissioner, supra at 487; Pessin v. Commissioner, 59 T.C. 473, 489 (1972).

The evidence in the record indicates that Mr. Norris is a competent and experienced accountant. The parties agree that Mr.

Norris received a package of information from petitioner's office consisting of Schedules K-1 and other various schedules in order to prepare petitioner's individual return, including the schedule prepared by Peat Marwick.

Petitioner claims that Peat Marwick characterized a portion of the gain attributable to Hammermill stock transactions as personal gain to petitioner when the gains were actually attributable to the activities of Bilzerian & Mack. Petitioner contends that this was done for the purpose of accommodating the Macks' tax planning objectives and that he did not consent to participation in this activity.[9] As a result, petitioner claims that the $4 million was improperly omitted from the Schedule K-1 for petitioner attached to Bilzerian & Mack's 1986 Form 1065. Petitioner argues that neither he nor Mr. Norris had any way of knowing that Peat Marwick was characterizing approximately $4 million of gains from Hammermill stock transactions as personal gain to petitioner instead of reporting it on the Schedule K-1 for petitioner. Petitioner further argues that he was involved in several hundred million dollars of financial transactions during 1986, which diminished his ability to recognize that approximately $4 million of taxable income was omitted from the return.

---

[9]Petitioner claims that the characterizations of personal gain or gain through Bilzerian & Mack were merely paper entries to accommodate the Macks.

Petitioner did not introduce testimony or other evidence from either Peat Marwick or the Macks. In fact, petitioner failed to present any evidence, other than his own testimony, to corroborate his argument that Peat Marwick improperly omitted the $4 million from the Schedule K-1 for the Bilzerian & Mack partnership return for 1986 and that petitioner was not aware of the characterizations made by Peat Marwick. In addition, petitioner's amended 1986 return reports the previously omitted $4 million as "Adjustments to Schedule C - Income From Sales". This is consistent with Peat Marwick's original characterization of this amount as "Personal Gain" and inconsistent with petitioner's argument that it was income from the partnership. In this situation, we are not required to, and we do not, rely on petitioner's self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioner argues that Mr. Norris's testimony supports his claim that the $4 million omission was a result of Mr. Norris's mistake. Mr. Norris testified that he learned in 1988 that he had made a mistake in preparing petitioner's 1986 return because he "missed about $4 million in income". However, Mr. Norris's testimony was vague, evasive, and contradictory.[10] The following

---

[10]We note that Mr. Norris was previously a partner of petitioner's, and Mr. Norris, a resident of California, testified that at the time of trial he stayed at petitioner's personal residence in Tampa, Florida.

discussion of the 1992 malpractice lawsuit that petitioner

brought against Mr. Norris for the omission of the $4 million

from petitioner's 1986 return occurred on the cross-examination

of Mr. Norris:

> Q    All right.  And is it true that you denied
> liability -- any liability for malpractice in that
> case?
> A    I really don't remember what I said or didn't say.
> I would assume that that's true, but I don't know for
> sure.  I don't remember the case now at all.
>
> Q    This would've been about eight years ago.
> A    Yes.
>
> Q    Did you get sued often?
> A    No, I have never been sued before.
>
> Q    And your testimony then is:  you got sued and
> don't remember anything.
> A    What I'm saying is that I turned it over to the
> attorney who is representing me and the insurance
> company, and he did whatever he needed to do, and I was
> involved to a very small degree.
>
> Q    What was the result of the lawsuit?
> A    It was, I think, withdrawn, I believe.  I think it
> was withdrawn.
>
> Q    And you didn't have to pay any money, did you, as
> a result of this lawsuit to Paul Bilzerian.
> A    No, not to him.
>
> Q    To anybody?
> A    Oh, I paid legal fees, and if it would've been my
> insurance company would've paid.  I wouldn't have paid
> him anyhow.
>
> Q    Do you remember any depositions in connection with
> that lawsuit?
> A    I don't, but I won't say that there wasn't, but
> the thing is is that, as I said, that whole thing is
> just been -- I have forgot it all.  It was not
> important for me to remember, and I haven't gone back
> and reviewed any papers.

Q    Do you remember accepting liability or denying
liability in that lawsuit?
A    I am assuming that if I went to the attorney I
probably denied liability.

Q    Okay.  Didn't we speak about a week ago or so?
A    Yes.

Q    And in that conversation you told me that you deny
liability?
A    I don't remember if I said that to you.  I
probably said that to you, though.  But you are asking
me questions that I really, in my memory since, I don't
know.  I can only tell you what I think.

Mr. Norris further testified that at the time he prepared
petitioner's 1986 return, he believed it was accurate and correct
and that he did not have any reason to believe that there was any
error committed in the preparation of the return.  When
petitioner sued Mr. Norris for malpractice in 1992, Mr. Norris
denied any liability in the malpractice proceeding.  Finally,
petitioner has not alleged that prior to the preparation of the
1986 return, he informed Mr. Norris that either Peat Marwick or
the Macks asked petitioner to participate in recharacterizing a
portion of the gain from the Hammermill stock transactions
attributable to Bilzerian & Mack in order to accommodate the
Macks' tax planning objectives.  Considering these circumstances,
we do not find either petitioner or Mr. Norris credible with
respect to their testimony in support of petitioner's position
that the $4 million omission was attributable to a mistake by Mr.
Norris.  Tokarski v. Commissioner, 87 T.C. at 77; see McCann v.

Commissioner, T.C. Memo. 2001-153; Garrett v. Commissioner, T.C. Memo. 1997-231.

Assuming arguendo that all necessary information was provided to Mr. Norris before his preparation of petitioner's 1986 return, we still would not deviate from the general rule that the duty of filing accurate returns cannot be avoided by placing responsibility on an agent. Even if all necessary information is supplied to the return preparer, the taxpayer still has a duty to review the return prior to signing and filing it in order to ensure that all income items are included. Metra Chem Corp. v. Commissioner, 88 T.C. at 662; Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), affd. 651 F.2d 1233 (6th Cir. 1981); Bailey v. Commissioner, 21 T.C. 678, 687 (1954); Magee v. Commissioner, T.C. Memo. 1993-305; Fraley v. Commissioner, T.C. Memo. 1993-304.[11]

Petitioner claims that he carefully reviewed the return and that there was no way he could have recognized that approximately

_____

[11]See Loftus v. Commissioner, T.C. Memo. 1992-266 n.3, wherein we stated:

> The responsibility to review a return cannot be trivialized. In Morrow v. Commissioner, T.C. Memo. 1991-101, we held that supplying records to an accountant and relying on the accountant to prepare a return was not sufficient to relieve a taxpayer of the 'ultimate responsibility for the correctness of their returns.' Based on the taxpayers' failure to adequately review their returns, we sustained the Commissioner's negligence determination.

$4 million of taxable income was omitted from the return. However, petitioner also testified that he received the return on October 15, 1987, and, due to requests for extension filed by petitioner, the return was due on that same day. Petitioner stated that he could not recall whether he called Mr. Norris to question the accuracy of the return on October 15, 1987, nor could he recall discussing with Mr. Norris at any time the $2 million discrepancy between the estimated payment by petitioner and the tax liability as reported on the original 1986 return. In his criminal trial, petitioner testified that he was delighted that the return he received from Mr. Norris showed a tax liability of only $3 million, and he never challenged the accuracy of the return.

Petitioner is a well-educated individual who was involved in trading securities for several years prior to 1986. He was provided with a schedule from Peat Marwick outlining petitioner's estimated tax liability for 1986, and the schedule specifically identified the $4 million in gains from the purchase and sale of the Hammermill stock. Petitioner accepted the return as prepared by Mr. Norris without questioning its accuracy or inquiring as to the approximately $2 million difference between the tax liability stated on the return and the amount paid as an estimate of the

tax liability for 1986.[12]  Under these circumstances, petitioner cannot insulate himself from the negligent omission of $4 million of taxable income from the return.  Accordingly, we hold that petitioner is liable for the additions to tax for negligence for 1986.

<u>Decision will be entered under Rule 155</u>.

---

[12]The $2 million difference is attributable to the fact that petitioner's adjusted gross income and tax liability shown on the original return was underreported by approximately 40 percent.