T.C. Summary Opinion 2009-90


UNITED STATES TAX COURT


LISA AND BRIAN A. SYMONETTE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13403-06S.          Filed June 8, 2009.


Brian A. Symonette, pro se.

<u>Brian A. Pfeifer</u>, for respondent.


CHABOT, <u>Judge</u>:  This case was heard pursuant to section 7463.[1]  The decision to be entered is not reviewable by any other court, and this opinion shall not be treated as a precedent for any other case.  Sec. 7463(b).

_____

[1]Unless indicated otherwise, all chapter and section references are to chapters and sections of the Internal Revenue Code of 1986 as in effect for the year in issue, except as to sec. 7463, which is as in effect for proceedings commenced on the date the petition in the instant case was filed.

Respondent determined deficiencies in Federal individual income tax and an accuracy-related penalty under section 6662[2] against petitioners for 2003 as follows:

| Petitioner | Deficiency | Penalty Sec. 6662 |
|---|---|---|
| Lisa Symonette | $2,039 | -- |
| Brian A. Symonette | [1]5,346 | $1,069.20 |

[1]Of this amount, $5,063 is income tax under ch. 1 and $283 is self-employment tax under ch. 2.

Petitioners had filed separate tax returns for 2003, and the notices of deficiency were prepared with respect to those tax returns. After they filed the separate tax returns and before the notices of deficiency were issued, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, constituting a joint tax return for 2003.[3] As a result (1) we consult petitioners' separate tax returns as necessary to understand respondent's determinations in the notices of deficiency, but (2) redeterminations and computations shall be made with respect to petitioners' joint tax return. For example: Petitioner Lisa Symonette (hereinafter sometimes referred to as Lisa) filed her

_____

[2]At trial respondent's counsel clarified that the penalty is for negligence or disregard of rules or regulations, and not for any other category to which sec. 6662 applies.

[3]None of the limitations set forth in sec. 6013(b)(2) applies, and so the joint return is effective (respondent so concedes) in accordance with sec. 6013(b)(1), and petitioners' liabilities are joint and several. Sec. 6013(d)(3). See sec. 6017 and sec. 1.6017-1(b)(2), Income Tax Regs., as to the self-employment taxes.

separate tax return claiming head of household status, and petitioner Brian A. Symonette (hereinafter sometimes referred to as Brian) filed his separate tax return claiming single status. In the notices of deficiency respondent determined that each petitioner should be treated as married filing separately. As a result of the parties' stipulation as to the joint tax return and the absence of any challenge to the effectiveness of that filing, the joint tax return status supersedes both (a) the filing status each petitioner claimed on his or her separate tax return and (b) respondent's determinations as to petitioners' filing statuses.

Another result of the foregoing is that (1) the joint deficiency may be less than the sum of the separate deficiencies determined in the notices of deficiency, but (2) the joint deficiency may be greater than one or both of the separate deficiencies determined in the notices of deficiency. We treat the parties' agreement as to the effectiveness of the joint tax return as satisfying the section 6214(a) requirement that respondent claim an increased deficiency, but only to the extent that (in the peculiar setting of the instant case) any such increase results solely from the shift from separate tax returns to a joint tax return.

By answer, filed at the start of the trial session, respondent asserted an increased deficiency (and correspondingly increased section 6662(a) penalty) by disallowing all of the

items from Schedule E, Supplemental Income and Loss, that Brian had claimed on his separate tax return and that respondent had not disallowed in the original notice of deficiency to Brian. This new disallowance was due to "the passive activity loss limitations of I.R.C. § 469." In a sense, this superseded the Schedule E adjustments in the notice of deficiency. On brief respondent concedes the matter raised in the answer, in effect returning the Schedule E adjustments to their previous status.

Respondent did not determine a section 6662 penalty in the notice of deficiency issued to Lisa. Accordingly, no section 6662 penalty attaches to any of the adjustments shown in the notice of deficiency to Lisa even though those adjustments may be taken into account in determining petitioners' joint tax liability.

Lisa did not appear at the trial of this case. We granted respondent's motion to dismiss as to Lisa, but ruled that, in light of the superseding joint tax return, decision will be entered as to Lisa in the same amount as decision is entered as to Brian. Lisa's case has not been severed; thus she remains a party in the instant case. See DeLucia v. Commissioner, 87 T.C. 804 (1986).

After concessions by both sides,[4] the issues for decision[5] are:

---

[4]Petitioners concede that they are not entitled to the following:

(1) A $550 Schedule E cleaning and maintenance expense;

(2) any deduction for business use of their home for the Computer Doctor business;

(3) $2,500 of the claimed $4,000 deduction for IRA contributions on their joint tax return;

(4) $31 of long-term capital loss.

Respondent concedes that petitioners are entitled to the following:

(1) Schedule E insurance expense of $708;

(2) a current deduction for $21.25 interest shown on the stipulated settlement for residential rental realty located in Miami, Fla.;

(3) $2,708 of rent paid in connection with the Tax Doctor business;

(4) a $600 child care credit; and

(5) an additional mortgage interest deduction of $4,316.

Respondent has also conceded that certain payments were made but not conceded the deductibility of the payments. Neither side has enlightened the Court as to how the payments relate to any of the issues before the Court.

[5]The redetermination of Brian's self-employment taxes depends on concessions and resolutions of disputes as to his Tax Doctor and Computer Doctor businesses.

The redetermination of petitioners' allowable deductions claimed on Schedule A, Itemized Deductions, depends on (1) the law applicable to joint tax returns as distinguished from the separate tax return status in the notices of deficiency, and (2) the effect of concessions and resolutions of disputes on other issues.

(1) The proper treatment of specific components of petitioners' claimed loss from residential rental realty;

(2) whether petitioners are entitled to disputed deductions for Brian's Tax Doctor business;

(3) whether petitioners are entitled to disputed deductions for Brian's Computer Doctor business;

(4) the proper treatment of the $1,500 Lisa contributed to her IRA; and

(5) whether petitioners are liable for an accuracy-related penalty.

## Background

Petitioners resided in Florida when the petition in the instant case was filed. They were married as of December 31, 2003.

For convenience, we will combine our findings and analysis issue by issue.

## Analysis

A. <u>In General</u>

In general, the Commissioner's determinations as to matters of fact in the notice of deficiency are presumed to be correct, and the taxpayers have the burden of proving otherwise. See Rule 142(a);[6] <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Brian has not contended that section 7491 applies so as to shift the burden of proof; on the record in the instant case, if such a contention

---

[6]Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

had been made, then we would have concluded that the requirements of section 7491(a)(2) have not been met, and so the burden of proof would not have been shifted. But section 7491(c) imposes on respondent the burden of production with respect to the section 6662 penalty. This will be dealt with _infra_ section F, Section 6662 Penalty.

B. _Schedule E_

On July 29, 2003, petitioners bought for $52,000 real property in Miami, Florida, hereinafter sometimes referred to as the Miami property. They placed the Miami property in service as residential rental property on or about September 1, 2003.

On his separate tax return Brian claimed a loss of $12,494 from the Miami property and deducted this amount from unrelated income. The effect of respondent's adjustments was to continue to allow more than 60 percent of this claimed loss. As a result the dispute is not whether _any_ deduction should be allowed, or even whether any loss should be allowed against unrelated income. See _infra_ note 7. Rather, the dispute is about the proper treatment of specific components of the claimed loss.

1. _Allocation Between Land and Building_

Respondent notes, and petitioners do not dispute, that the cost of the Miami property must be allocated between the land and the building.

Respondent states as follows:

> Respondent is not challenging Petitioners [sic] allocation of the purchase price.[4]

> [4]Petitioner claimed a Schedule E depreciation deduction in the amount of $445. The total purchase price of the Miami property was $52,000. Using the applicable depreciation method and recovery period, Petitioners allocated $26,700 of the total purchase price to the basis of the Miami property subject to depreciation. $26,700 divided by $52,000 equals 51.3%.

Petitioners claimed $445 of depreciation on their Schedule E on account of the Miami property. This matches the $445 of depreciation claimed on Brian's separate tax return. Brian's separate tax return includes a Form 4562, Depreciation and Amortization, relating to his Schedule E, which shows how the $445 depreciation deduction was calculated. Petitioners' joint tax return did not include a Form 4562 relating to the joint tax return Schedule E; but because the joint tax return arrives at the same $445 deduction, we treat the joint tax return as implicitly following the same analysis as Brian's separate tax return. The Form 4562 relating to Brian's separate tax return Schedule E shows the information set forth in table 1.

### Table 1

| Item | Information |
| --- | --- |
| (a) Classification | Residential rental property |
| (b) Mo. and yr. placed in service | 2003-09-01 |
| (c) Basis for depreciation | 42,000.00 |
| (d) Recovery period | 27.5 yrs. |
| (e) Convention | MM |
| (f) Method | S/L |
| (g) Depreciation deduction | 445.00 |

From the foregoing, we conclude that petitioners allocated $42,000 of the total $52,000 Miami property purchase price to the building.  Because of respondent's explicit concession that respondent is not challenging petitioners' allocation, we hold that 80.8 percent ($42,000 ÷ $52,000) of any additional capitalized expenditures shall be added to the depreciable basis of the building and 19.2 percent ($10,000 ÷ $52,000) to the nondepreciable basis of the land.

2.  Specific Deductions

The Schedules E of Brian's separate tax return and petitioners' joint tax return list nine deduction items aggregating $13,899.  The notice of deficiency allowed $9,018 of this total, describing it as "the amount verified."  The parties have not favored us with a listing of the components of the $4,881 that was disallowed.

Respondent did not contend that there should be disallowances in addition to those set forth in the notices of deficiency.[7]  We conclude that the focus of the parties' stipulations and arguments remains the $4,881 that was disallowed.

---

[7]As explained supra, respondent asserted in the answer an increased deficiency based on contentions about the effect of sec. 469 but abandoned this entire assertion on brief.  As a result, we have concluded that the situation has returned to what it was before the sec. 469 issue was raised.

The parties stipulated that respondent concedes the Schedule E $708 insurance item that petitioners claimed. We hold that this item is allowable in addition to the $9,018 that respondent allowed in the notice of deficiency.

The parties stipulated that petitioners concede the $550 cleaning and maintenance item that petitioners claimed. We hold that respondent is sustained in the disallowance of this item as part of the disallowed $4,881.

The parties stipulated that items aggregating about $5,000 were paid or incurred "in connection with the purchase of the Miami property". As to all but $21.15 of this total, respondent contends that about half must be capitalized and added to the basis of the Miami property and the other half capitalized as loan cost and amortized over the life of the mortgage loan. On brief respondent concedes that the $21.15 of interest shown on the stipulated settlement statement for the Miami property is currently deductible. Petitioners have not disputed any of these characterizations, and so we hold for respondent on this matter, with the modifications described in the next paragraph.

Two adjustments shall be made in the computations. Firstly, in accordance with our discussion supra section B. Schedule E, 1. Allocation Between Land and Building, 80.8 percent (not 51.3 percent) of any increase in basis is to be added to that part of the basis that is subject to depreciation. Secondly, because

respondent has not asserted an increased disallowance (compare our discussion of section 6214(a), supra) none of the capitalized amounts are part of the $9,018 of deductions that respondent allowed in the notice of deficiency.

As to all Schedule E matters not otherwise disposed of, we conclude that petitioners have failed to carry their burden of proving error in respondent's determinations.  We so hold.

C.   Schedule C--"Tax Doctor"

Brian operated a tax preparation business under the business name "Tax Doctor".  The Tax Doctor business involved Brian's preparing tax returns and giving tax advice.  He reported the results therefrom on a Schedule C, Profit or Loss From Business (Sole Proprietorship), on his separate tax return.  The corresponding Schedule C on petitioners' joint tax return is identical to the one on Brian's separate tax return.

On this Schedule C petitioners reported $8,500 of gross income, claimed deductions of $23,857 of total expenses, and calculated a net loss of $15,357, which was then used to offset some of their other income.

The notice of deficiency allowed $3,942 of the claimed $23,857 of deductions, describing the $3,942 as "the amount verified".  The parties have not favored us with a listing of the components of the allowed $3,942 or of the disallowed $19,915.

Consistent with our analysis supra at B. Schedule E, 2. Specific Deductions, because respondent did not contend that there should be disallowances in addition to those set forth in the notices of deficiency, we conclude that the focus of the parties' stipulations and arguments remains the $19,915 that was disallowed in the notice of deficiency to Brian.

1. Office Expenses

Brian started the Tax Doctor business at the beginning of 2003. Originally, Brian conducted the Tax Doctor business out of petitioners' home.[8] At some point he decided to move this business out of petitioners' home.

Brian leased[9] office space for the Tax Doctor business in Miami Lakes, Florida (hereinafter sometimes referred to as the Miami Lakes office), at a monthly rent of $902.81, for a 12-month term beginning November 1, 2003. The lease agreement states it was executed on October 6, 2003. Brian's signature on the lease

[8]Brian did not on his separate tax return (and petitioners do not on their joint tax return) claim any deductions for business use of the home in connection with Brian's Tax Doctor business. They did claim such deductions in connection with Brian's Computer Doctor business (discussed infra), but the parties have stipulated that petitioners are not entitled to such deductions in connection with that business.

[9]The parties stipulated a lease agreement showing "Tax Doctor, Inc. A Florida Corporation" as lessee. The parties do not clarify the apparent conflict between (1) the lease agreement's referral to Tax Doctor as a corporation and (2) petitioners' claim of the deduction on a Schedule C as a sole proprietorship, a claim agreed to by respondent; we leave the parties where we find them on this matter.

agreement is dated October 9, 2003.  Brian's $2,529 check to the lessor, noting that it was for "Office Space", is dated October 6, 2003; the check was deposited by the lessor on October 6, 2003.

Respondent concedes $2,708 of the $4,460 petitioners claimed as office expenses in connection with the Tax Doctor business. We assume this represents 3 months' rent (3 x $902.81 = $2,708.43) for the Miami Lakes office.

Petitioners do not concede the remaining $1,752 of the claimed office expenses.  Brian has not described or offered any evidence purporting to relate to this item.  We hold that (1) the conceded $2,708 is allowable in addition to the $3,942 respondent allowed in the notice of deficiency and (2) respondent's disallowance of the remaining $1,752 is sustained as part of the $19,915 disallowed in the notice of deficiency.

2.  Depreciation

On the Schedule C for the Tax Doctor business petitioners claim a deduction of $15,085 for depreciation and section 179 expense.  Apparently, $14,289 relates to a Hummer vehicle shown on the Form 4562 as having been placed in service on October 20, 2003, and driven 1,023 miles on business, 240 miles commuting,

and 234 miles for other personal purposes.[10]  Respondent
disallowed the entire $15,085.

Brian testified that (1) he bought the Hummer in order to
(a) move all the Tax Doctor business equipment and furniture out
of his home, (b) entertain clients, and (c) gain new revenue; and
(2) he used the Hummer for commuting.

Section 162(a) allows a deduction for "all the ordinary and
necessary expenses paid or incurred during the taxable year in
carrying on any trade or business".  E.g., Lucas v. Commissioner,
79 T.C. 1, 6 (1982).  Under section 6001 and section 1.6001-1(a)
and (e), Income Tax Regs., a taxpayer must keep such permanent
books of account or records as are sufficient to establish the
amount of gross income, deductions, credits, or other matters
required to be shown on the tax return.  If the books and records
are not adequate to establish the amount of deductions or
credits, but we are persuaded that the taxpayer is entitled to
deduct more than the Commissioner allowed, then we are required
to make some estimate of how much more should be allowed,
"bearing heavily if * * * [we choose] upon the taxpayer whose
inexactitude is of his own making."  Cohan v. Commissioner, 39

---

[10]The Hummer deductions are shown as $8,318 of special
depreciation, $971 of regular depreciation, and $5,000 of sec.
179 expense.  Two other items are shown as $735 and $61 on the
Form 4562, making up the total claimed $15,085.

F.2d 540, 543-544 (2d Cir. 1930).  But sections 274(d)[11] and

280F(d)(4)[12] provide that no deduction shall be allowed with

_____

[11]Sec. 274(d) provides, in pertinent part, as follows:

SEC. 274.   DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC.,
            EXPENSES.

        *     *     *     *     *     *     *

     (d) Substantiation Required.--No deduction or
credit shall be allowed--

        *     *     *     *     *     *     *

        (4) with respect to any listed property
     (as defined in section 280F(d)(4)),

unless the taxpayer substantiates by adequate records
or by sufficient evidence corroborating the taxpayer's
own statement (A) the amount of such expense or other
item, (B) the time and place of the travel,
entertainment, amusement, recreation, or use of the
facility or property, or the date and description of
the gift, (C) the business purpose of the expense or
other item, and (D) the business relationship to the
taxpayer of persons entertained, using the facility or
property, or receiving the gift. * * *

[12]Sec. 280F(d)(4) provides, in pertinent part, as follows:

SEC. 280F.   LIMITATION ON DEPRECIATION FOR LUXURY
             AUTOMOBILES; LIMITATION WHERE CERTAIN PROPERTY
             USED FOR PERSONAL PURPOSES.

        *     *     *     *     *     *     *

     (d) Definitions and Special Rules.--For purposes
of this section--

        *     *     *     *     *     *     *

        (4) Listed property.--

            (A) In general.--Except as provided in
                                        (continued...)

respect to passenger automobiles or any other property used as a means of transportation unless the taxpayer substantiates certain matters by adequate records or by sufficient records corroborating the taxpayer's own statement. There is no leeway for Cohan type approximations under section 274(d). See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969). Moreover, section 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs.,[13] 50 Fed. Reg. 46016 (Nov. 6, 1985), prohibits a deduction or credit with respect to such property unless the taxpayer provides both the amount of each business use "and the total use of the listed property for the taxable period."

At trial Brian offered (and the Court received) into evidence a document he described as "My mileage log for the Hummer 2, H2 use[d] for business purposes" (hereinafter sometimes

---

[12](...continued)
            subparagraph (B), the term "listed property" means--

                    (i) any passenger automobile,

                    (ii) any other property used as a means of transportation * * *

[13]Sec. 7805(e)(2), providing that any temporary regulation expires within 3 years after the date the regulation was issued, applies to regulations issued after Nov. 20, 1988. Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6232(b), 102 Stat. 3342, 3735. The temporary regulation we apply in the instant opinion was issued well before that effective date, and so this regulation's validity is unaffected by sec. 7805(e)(2). See, e.g., Boyd v. Commissioner, 122 T.C. 305, 320 (2004).

referred to as the Hummer log).  The Hummer log has 33 dated entries, the earliest being Monday, October 6, 2003, showing 42 miles for "Office rental evaluation", and the latest being Sunday, December 28, 2003, showing 36 miles for "Office equipment move".  The mileage amounts shown on those 33 entries total 1,256.  Brian testified that the Hummer log "came from the electronic mileage log inside the Hummer itself.  There's a button where you put business miles.  It records it.  Turn it off, it turns it off.  Hit it, it records it.  It still does it to this day."  Brian testified that the electronic equipment in the Hummer is not connected to a printer and it does not show separate trips; it does show total miles driven between successive pushes of a button on the equipment.  Brian testified that he input the mileage to his laptop computer and added the statement of business purpose that appears next to each entry on the Hummer log.  Brian testified he input this material at the end of each week.  The Hummer log is the printout from his laptop computer and not from the electronic equipment in the Hummer.  Brian testified that the number of Hummer business miles shown on petitioners' joint tax return (1,023) is less than the number of Hummer business miles shown on the Hummer log (1,256) because he used estimates on the joint tax return.  Brian testified that he

drove the Hummer for commuting "Every now and then" but did not show those miles on the Hummer log because "Why would I record miles I can't get credit for?"

The cumulative effect of the following considerations leads us to conclude that the Hummer log does not satisfy the substantiation requirements of section 274(d).

Brian testified that the Hummer log was updated at the end of each week.  Yet he explained that the tax return mileage numbers were lower than the Hummer log totals because he had to make estimates when he filed the tax returns.  Petitioners' 2003 joint tax return was filed in 2005 or early 2006.  We believe that, if the Hummer log indeed was updated weekly through the last few months of 2003, then it--and not estimates--would have been used for the tax return, especially the joint tax return. The fact that the joint tax return still was based on estimates, as Brian testified, suggests to us that the Hummer log did not yet exist, which in turn suggests to us that it was not currently maintained.  We cannot tell from the Hummer log itself when it was printed.  We cannot tell when the information was input to the laptop computer.

Petitioners' joint tax return states that the Hummer was placed in service on October 20, 2003.  The Hummer log shows that 12 of the 33 days of use (472 of the total 1,256 miles) were before October 20.  Petitioners have not explained how this

substantial conflict could have occurred if the Hummer log had been maintained currently, as Brian testified.

Entries in the Hummer log are also inconsistent with the lease for rent of the Miami Lakes office. This lease was dated October 6, 2003, and signed by Brian on October 9, 2003, for office rental beginning on November 1, 2003. A check to the lessor for "Office Space" was dated October 6, 2003, and deposited by the lessor that same day. Yet the Hummer log includes eight separate entries for "Office rental evaluation" between October 6 and November 16, 2003. When asked what the entries for "Office rental evaluation" meant, Brian said: "I did not have an office at the time. I had to find one." At trial Brian conceded that the entry for "Office rental evaluation" on November 16, 2003, was erroneous, and he admitted that "there may be a discrepancy or two" in the Hummer log.

The Hummer log does not show the total use of the Hummer during 2003, in violation of the requirement of section 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Brian points out that the Form 4562 shows 240 miles commuting and 234 miles for other personal purposes. But the Form 4562 is not corroborated, either.

The many errors and inconsistencies in the Hummer log make it unreliable, and it does not satisfy the strict substantiation requirements of section 274(d). Brian's vague testimony, by

itself, is insufficient to substantiate the claimed mileage. Indeed, his testimony serves to further support our conclusion that section 274(d) requires us to sustain respondent's disallowance of $14,289 of claimed expenses pertaining to the Hummer.

As for the remaining $796 of depreciation expense claimed in connection with the Tax Doctor business, petitioners neither described what was depreciated nor offered any evidence; we thus sustain respondent's disallowance of that amount.

### 3. Other Expenses

On brief respondent stated an allowance of $108 of petitioners' claimed $827 car and truck expenses for Brian's Tax Doctor business. Respondent did not indicate whether this was part of "the amount verified" stated in the notice of deficiency.

Neither side presented any evidence as to the remaining expenses claimed for Brian's Tax Doctor business. We hold that (1) the conceded $108 is allowable in addition to the $3,942 respondent allowed in the notice of deficiency plus the $2,708 allowed in 1. Office Expenses, supra, and (2) respondent's disallowance of the remaining claimed Tax Doctor expenses is sustained as part of the $19,915 disallowed in the notice of deficiency.

D.  Schedule C--"Computer Doctor"

Brian operated a computer business under the business name "Computer Doctor".  The Computer Doctor business involved Brian's installing hardware and software, and performing network services; he also consulted about best practices when dealing with computers.  He reported the results therefrom on a Schedule C on his separate tax return.  The corresponding Schedule C on petitioners' joint tax return differs from the one on Brian's separate tax return.

Table 2 compares the amounts Brian reported on his separate tax return with the amounts petitioners reported on their joint tax return regarding Brian's Computer Doctor business.

Table 2

| Schedule C Line Item | Brian's Separate Tax Return | Petitioners' Joint Tax Tax Return |
|---|---|---|
| 7 Gross income | $3,970 | $3,970 |
| 8 Advertising | $150 | $150 |
| 9 Car and truck expenses | 1,364 | 2,764 |
| 13 Depreciation, etc. | 2,639 | 2,639 |
| 20a Rent for vehicles, etc. | 1,020 | 1,200 |
| 21 Repairs and maintenance | 213 | 250 |
| 22 Supplies | 540 | 540 |
| 23 Taxes and licenses | 375 | -- |
| 24a Travel | 250 | -- |
| 24d Meals and entertainment | 945 | 945 |
| 25 Utilities | 1,950 | 1,950 |
| 27 Other expenses | 46 | 46 |
| 28 Total | 9,492 | 10,484 |
| 29 Tentative profit (loss) | (5,522) | (6,514) |
| 30 Business use of home | 4,200 | 6,658 |
| 31 Net profit (loss) | (9,722) | (13,172) |

The parties do not have any dispute as to the income from Brian's Computer Doctor business.  See supra table 2, item 7. Petitioners have conceded that they are not entitled to any deduction for business use of the home in connection with Brian's Computer Doctor business.  See supra table 2, item 30. Respondent allowed all but $2,970 of the other amounts claimed on Brian's separate tax return; i.e., all but $1,020 rent for vehicles, etc., and $1,950 utilities.  See supra table 2, items 20a and 25.

### 1.  Vehicles Rent, Utilities

Petitioners did not provide any evidence or any useful discussion on brief[14] regarding the disallowed $1,020 and $1,950 items.  We sustain respondent's disallowances of these items.

### 2.  Increased Amounts

As to three of the items on their joint tax return Computer Doctor Schedule C, petitioners deducted greater amounts than Brian had deducted on his separate tax return.  See supra table 2, items 9, 20a, and 21.  The parties noted these differences by stipulation at the start of the trial.  Respondent did not

---

[14]On brief petitioners made the following argument: "Schedule C Deductions are accurate and should be allowed.  This is proven by all of the additional receipts and documents the forced the respondent to accept existence.  As seen by admitted items the day of court."  [Reproduced literally.]  Apart from that generic statement, petitioners' brief did not provide any discussion of any of the expenses for the Computer Doctor business.

indicate at trial that these three increases should be disallowed.  We note that respondent had allowed in full the amounts claimed on Brian's separate tax return for table 2, items 9 and 21.

On brief respondent contends for the first time that (1) all three increased amounts are "at issue", (2) petitioners failed to carry their burden of proof on the increased amounts, and (3) certain evidence does not support the allowability of the increased amounts.  Petitioners' brief is unhelpful.  See supra note 14.

At the start of the trial we pointed out that petitioners had the burden of proof generally as to matters in the notices of deficiency, but the joint tax return was the starting point for calculating any deficiency.

It is plain that the three increased amounts claimed on the joint tax return were not disallowed in either of the notices of deficiency and were not conceded by petitioners.  Under the circumstances, respondent has the burden of proof as to the three increased amounts.  Respondent failed to carry this burden of proof.

Also, by the time the instant case was submitted, respondent had not contended that the three increased amounts were in dispute.  We will not consider an issue raised for the first time

on brief when it is too late to introduce evidence that might alter the effect of other evidence already in the record.

Accordingly, we hold for petitioners that the three increased amounts are deductible.

### 3. Reduced Amounts

As shown supra on table 2, Brian claimed deductions of $375 for taxes and licenses (item 23) and $250 for travel (item 24a). Respondent allowed those deductions in the notice of deficiency. As shown supra on table 2, petitioners did not claim either of those two deductions on their joint tax return.

It is well established that amended tax returns may constitute admissions that errors were made on the earlier filed tax returns. See, e.g., Badaracco v. Commissioner, 464 U.S. 386, 399 (1984); Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). We treat petitioners' joint tax return as embodying their concessions that they were not entitled to deductions for those two items.

As we have noted supra, we made it plain at the start of the trial that the joint tax return was to be the starting point. Petitioners did not claim deductions for those items on their joint tax return and did not contend at trial that those deductions should be allowed.

We hold that deductions for items 23 and 24a, as shown supra on table 2, are not allowed.

E.   IRA Contributions

On her separate tax return Lisa claimed a $1,000 deduction for an individual retirement account (IRA) contribution. Respondent disallowed this deduction.  On his separate tax return Brian claimed a $1,500 deduction for an IRA contribution. Respondent disallowed this deduction.  On their joint tax return petitioners claimed a $4,000 deduction for an IRA contribution. The parties stipulated that each petitioner made a $1,500 IRA contribution in 2003.  That year Brian participated in a qualified retirement plan through his employer.  At trial Brian conceded that the only IRA deduction petitioners claim is $1,500 for Lisa's IRA contribution.

As best we can tell, the only dispute between the parties that bears on the allowability of a deduction for any part of Lisa's stipulated $1,500 IRA contribution is whether Lisa was an "active participant".  See sec. 219(g)(5).  If she was, then the applicable dollar amount for limitation purposes is $60,000 and it is likely that no deduction is allowable.  See sec. 219(g)(3)(B)(i).  If Lisa was not an active participant, then the applicable dollar amount is $150,000 (because Brian was an active participant) and it is likely that some deduction is allowable. See sec. 219(g)(7).

Both sides seemed to carefully avoid presenting any evidence as to Lisa's status.  Brian offered an examiner's report which,

he said, proposed to allow the deduction.  We explained that the report does not really bear on Lisa's actual status, that it would be relevant to any negligence determination,[15] but that respondent had not determined, or asserted, negligence as to any item on Lisa's separate return.  As a result, the examiner's report, as Brian described it, would not be relevant to any matter in dispute.  Brian did not offer any other evidence regarding Lisa's status.  Respondent's counsel inquired as to Brian's status as an active participant--a matter that the parties had stipulated and Brian conceded--but did not inquire about or offer any evidence about Lisa's status.

In accordance with our ruling at the outset that petitioners have the burden of proof as to adjustments in the notices of deficiency but that the starting point for our redeterminations is petitioners' joint tax return, we hold (1) allowability of a deduction for $1,000 of Lisa's IRA contribution is to be tested using the $60,000 amount of section 219(g), and (2) allowability of a deduction for the remaining $500 of Lisa's IRA contribution is to be tested using the $150,000 amount of section 219(g).  No deduction is allowable for any part of the remainder of the $4,000 claimed IRA contribution deduction.

---

[15]At the trial we described the situation in Bermingham v. Commissioner, T.C. Memo. 1994-69, Issue II. A.(3), to illustrate the difference between allowability of the deduction on the one hand, and negligence on the other hand.

F.  <u>Section 6662 Penalty</u>

Respondent determined an accuracy-related penalty under section 6662(a) and (b)(1) for negligence or disregard of rules or regulations with respect to Brian's separate return, but not with respect to Lisa's.  Under section 6662(a) and (b)(1),[16] a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax due to, among other things, negligence or disregard of rules or regulations.  The term "negligence" includes any failure to make a reasonable attempt to comply with

_____

[16]Sec. 6662 provides, in pertinent part, as follows:

SEC. 6662.  IMPOSITION OF ACCURACY-RELATED PENALTY.

(a) Imposition of Penalty.--If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies.

(b) Portion of Underpayment to Which Section Applies.-- This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:

(1) Negligence or disregard of rules or regulations.

\*   \*   \*   \*   \*   \*   \*

(c) Negligence.--For purposes of this section, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard.

This does not include the amendment to the heading of the section made by sec. 812(e)(1) of the American Jobs Creation Act of 2004, Pub. L. 108-357, 118 Stat. 1580.

the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Higbee v. Commissioner, 116 T.C. 438, 449 (2001); sec. 1.6662-3(b)(1), Income Tax Regs.

The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. Disregard of rules or regulations is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances that demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. Id.

Section 6664(c)(1) provides, in pertinent part, that the section 6662(a) penalty shall not be imposed with respect to any portion of an underpayment if a taxpayer shows that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Reasonable cause and good faith may be indicated by an honest misunderstanding of fact

or law that is reasonable in light of the experience, knowledge, and education of the taxpayer.  Sec. 1.6664-4(b), Income Tax Regs.

Under section 7491(c) the Commissioner has the burden of production with respect to liability for the negligence or disregard penalty.  That is, the Commissioner must see to it that the record includes sufficient evidence indicating that it is appropriate to impose this penalty.  Higbee v. Commissioner, 116 T.C. at 446-447.  If the Commissioner satisfies this burden of production, then the taxpayer has the burden of proving that (1) the underpayment was not attributable to negligence or disregard of rules or regulations, or (2) the reasonable cause exception applies.  Id.

Perhaps the most telling evidence on this penalty issue is the Hummer log, discussed extensively supra under C. Schedule C-- "Tax Doctor", 2. Depreciation.  Petitioners reported that Brian received $8,500 in 2003 from Brian's "Tax Doctor" business of preparing tax returns and giving tax advice.  The Hummer accounted for about $15,000 of deductions from that business. The necessity of keeping appropriate records--and the understanding of the sort of records that would be appropriate-- to support so substantial a claim should have been reasonably clear to someone like Brian.  After all, he held himself out as knowledgeable about tax matters, people paid him to do tax work

for them or give tax advice to them, and he testified at trial as to why it was appropriate for him to insist on being called "Doctor". Brian testified he has a Ph.D. in education administration, a master's degree in management information systems, and a bachelor's degree in business administration. Yet on this major matter of dispute the major books and records item he offered--the Hummer log--was so much in conflict with what petitioners showed on their tax return that we doubted not only its reliability but even its existence at the time when, Brian testified, it was updated weekly.

As to substantially all of the other matters in dispute when the instant case was tried, Brian did not present appropriate books and records--in many instances, he did not present any books and records. As to the matters the parties settled with concessions or partial concessions, Brian did not present any books and records to show that he was not negligent even though he conceded the adjustment in whole or part.

The foregoing leads us to conclude that petitioners failed to maintain books and records in accordance with the requirements of section 6001 and the regulations authorized (and not challenged by petitioners) thereunder.

As we recently noted in Montgomery v. Commissioner, 127 T.C. 43, 66-67 (2006):

> The determination of whether a taxpayer acted with
> reasonable cause and in good faith depends on the

> pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional. Sec. 1.6664-4(b)(1), Income Tax Regs. * * *

Unlike the situation in <u>Montgomery</u>, in the instant case the record does not include evidence as to the steps Brian took to determine the correctness of any of the items as to which there is a determination of negligence or disregard of rules or regulations. Thus, petitioners failed to carry their burden of proof as to the reasonable cause exception.

We hold (1) respondent has carried the burden of production, (2) Brian has been negligent, and (3) petitioners have failed to carry their burden of proof as to reasonable cause.

We remind the parties that the negligence or disregard penalty applies only to those items as to which that penalty had been determined in the notice of deficiency to Brian. Also, although no negligence or disregard penalty had been determined against Lisa in the notice of deficiency to her, because of the joint tax return she becomes jointly and severally liable for any negligence or disregard penalty that we sustain.

To take account of the foregoing,

<u>Decision will be entered under Rule 155</u>.